# PUT-IN-BAY WATERWORKS &c. COMPANY *v.* RYAN.

APPEAL FROM THE CIRCUIT COURT FOR THE NORTHERN DISTRICT OF OHIO.

No. 332.   Submitted February 25, 1901.—Decided May 13, 1901.

The property and franchises, which are the subject matter of this suit, were not in the possession of the state court, when the Federal court appointed its receiver.

Within the letter of the statute there was a controversy between citizens of different States, in which the matter in dispute was over the sum of or value of two thousand dollars.

Jurisdiction having attached under the allegations of the original bill, that jurisdiction did not fail by reason of anything that appeared in *ex parte* affidavits, denying the truth of the allegations contained in the original bill in respect to the amount in dispute.

IN September, 1892, the Electric Supply Company, a corporation and citizen of the State of Connecticut, filed in the Circuit Court of the United States for the Northern District of Ohio a bill of complaint against the Put-in-Bay Waterworks, Light and Railway Company, a corporation and citizen of the State of Ohio. It was alleged in the bill that the plaintiff company had, in June, 1872, sold and delivered to the defendant company certain materials and supplies to be used in the erection of the lighting apparatus, powerhouse, station and railway of the defendant, of the value of $2787.04, and that said supplies and material were used in the construction of the lighting apparatus and railway of said defendant, situated in Put-in-Bay Island, in Ottawa County, Ohio, and that the entire amount of said claim was due and unpaid.

The bill further alleged that, on September 7, 1892, the plaintiff company had filed with the recorder of Ottawa County an affidavit containing an itemized statement of the amount and value of the materials and supplies furnished under said contract of sale, with a statement of the account and terms of payment to be made thereunder and a description of the premises upon which said lighting apparatus and railway were located, which said statement and all connected therewith were duly recorded by said recorder in a book kept for that purpose; that the plaintiff has a lien on the premises and all the property of defendant company from the 7th day of June, 1892, for the amount due with interest; and that, in the premises, the plaintiff was entirely without remedy according to the strict rules of the common law, and could only have relief in a court of equity where matters of such a nature were properly cognizable and reviewable.

The bill further alleged that the Railway Equipment Company, a corporation and citizen of the State of Illinois; John Arbuckle, Charles Ryan and W. J. Ryan, citizens of the State of Ohio; James K. Tillotson, a citizen of the State of Ohio;

the Cleveland Electrical Manufacturing Company, a corporation and citizen of the State of Ohio; the Industrial and Mining Guaranty Company, a corporation and citizen of the State of New York; John P. Carrothers, a citizen of the State of New York; and H. H. Warner, a citizen of the State of New York, claimed to have some interest in the premises upon which the plaintiff claimed the aforesaid lien; and the bill prayed that each of said parties should be required to appear and set up their respective claims, or be forever barred from setting up the same against the plaintiff. The bill prayed for an account with the defendant company, and for a decree of sale of said premises, etc.

On September 10, 1892, an answer and cross bill were filed by J. K. Tillotson. In this cross bill it was alleged that said Tillotson had built and equipped the railroad of the defendant company, and had received in payment therefor the stock of said company and mortgage bonds to the amount of $125,000; that he had contracted with John P. Carrothers and H. H. Warner, as owners and controllers of the Industrial and Mining Guaranty Company of New York, (named as defendants in the bill of complaint,) to sell and dispose of said stock and bonds, but that said Carrothers and Warner had not sold or accounted for the said stock or bonds, but that said Carrothers, claiming to be the owner of the capital stock of said defendant company, had elected himself president thereof, and had taken possession of said railroad, etc. It was thereupon prayed, in said cross bill, that a restraining order should be issued against said Carrothers and Warner and the said Industrial and Mining Guaranty Company, forbidding them, during the pendency of this suit, from selling or disposing of said stock and bonds, and that the court should appoint a receiver to take charge and custody of the railway and property in plaintiff's bill of complaint described, with instructions to care for and operate the same under the order of the court, and as, in the judgment of the court, might be for the interest of all parties concerned.

Thereupon, on September 10, 1892, a subpœna was issued summoning said Carrothers, Warner and the Industrial and Mining Guaranty Company to appear and answer said cross

bill. On the same day a temporary restraining order was issued against said Carrothers and Warner as prayed for in the cross bill, and one L. S. Baumgardner was appointed receiver, who gave a bond as such receiver in form and amount approved by the United-States District Judge.

The United States marshal made return that he had served the restraining order and subpœna on said John P. Carrothers, and that said H. H. Warner and the Industrial and Mining Guaranty Company were not found.

Subsequently, on September 26, 1892, the Put-in-Bay Waterworks, Light and Railway Company filed an answer to the bill of complaint, admitting that on June 7, 1892, the defendant had entered into a contract with the complainant company, whereby the latter company was to sell and deliver certain materials to be used in the construction of defendant's railway in Ottawa County, Ohio. The said answer contained the following allegations:

" This defendant says that it is not true that Exhibit ' A ' attached to complainant's bill contains a true and correct statement of the material so sold by the complainant to this defendant as aforesaid. And it is not true that all of said supplies and materials contained in said Exhibit ' A ' were used in the construction of the said railway. But, on the contrary, this defendant says that a large part of said materials were sold and delivered to said J. K. Tillotson, defendant, for the purpose of being used, and which were used, in the construction of certain property known as Hotel Victory on South Bass Island. This defendant says that it is not true that the material sold to this defendant by said complainant as aforesaid were of the value of $2787.04, as set forth in said Exhibit ' A,' but on the contrary this defendant is informed and believes, and so states the fact to be, that the materials so sold by said complainant to this defendant, through its vice president, the defendant Tillotson, for the purpose of being used in the construction of said railway, and which were so used, amounted in value to about the sum of $700, and no more. . . . This defendant further says that the said complainant, when it sold the said Tillotson the material set forth in Exhibit ' A ' of said complaint, well knew that a

large part of said material was so sold and delivered for the purpose of being used, and was used, in the construction of Hotel Victory, of which the said Tillotson was president, and which had no connection whatever with this defendant's railroad. And this defendant alleges that said complainant, at the request of said Tillotson, procured a lien to be filed with the recorder of Ottawa County against this defendant's property, on the day previous to the filing of the complainant's complaint herein, and for the entire amount of the material sold this defendant and also sold to said Tillotson for the use of said Hotel Victory. And said lien was so filed by said complainant at the request of said Tillotson, for said amount, and for the express purpose of instituting this action in this court.

"And this defendant prays that this honorable court may take an account of material sold by complainant to and for the use of the defendant, to be used in the construction of said railway, and the amount of said material so sold, which has been actually used in the construction thereof. And that the court may determine the value of said material so sold to and used by this defendant, and the actual amount of the lien which said complainant has on account thereof against the property of this defendant."

On September 26, 1892, the Put-in-Bay Waterworks, Light and Railway Company filed an answer to the cross bill of Tillotson, admitting some and denying many of the allegations thereof, and containing the following allegation :

"This answering defendant further says that on or about the 3d day of September, 1892, the said defendant Tillotson, attempting to interfere with the said company in the operation of its said railway, and to prevent the said company from the peaceable enjoyment of its said property, the common pleas court of Ottawa County, Ohio, on the petition of said Put-in-Bay Waterworks, Light and Railway Company, issued a restraining order enjoining the said defendant James K. Tillotson from interfering or attempting to interfere in any manner with the said company in the operation of its railway, and which said restraining order is still in full force and effect."

It also appears that the defendant company sued out of the

court of common pleas a writ of replevin against Tillotson, but it is not shown what the property levied on was.

Afterwards, on September 30, 1892, the answer and cross bill of Arbuckle, Ryan & Company, who had been named as defendants in said suit, was filed, in which it was, among other things, alleged that said firm had furnished a large amount of machinery and of labor for the said Put-in-Bay Waterworks, Light and Railway Company, which went into the construction of said railroad and powerhouse of said company, on which there was unpaid and due to the said Arbuckle, Ryan & Company a balance of $11,153.60, and for which they had filed, on August 17, 1892, with the recorder of Ottawa County, Ohio, an affidavit and itemized account, by virtue of which proceeding they had obtained a lien upon the property and railroad of the defendant, the said railroad company. They therefore prayed for an account, and for an order directing the sale of the said property and railroad, and for the payment of their claim out of the proceeds of such sale.

On October 15, 1892, L. S. Baumgardner, theretofore appointed receiver, filed a petition showing cause why certain expenditures incident to the care and preservation of the railroad and its property since they had come into his hands, and other expenditures necessary to be made, required him to raise a sum of not less than $5000, and prayed for leave to issue receiver's certificates for that purpose. This was followed by an order of the court authorizing the receiver to issue certificates to the amount of $5000, and declaring said certificates to be a first lien upon all the property of said railway company in the hands of said receiver.

Afterwards, on October 29, 1892, a motion to discharge the receiver was made on behalf of the defendant railway company, which was accompanied by an affidavit of J. P. Carrothers, as president of said company, in which, among other things, it was stated that on September 3, 1892, the affiant, as president of said company, was compelled to and did institute replevin proceedings to obtain possession of the personal property of said company, and that by virtue of said action the property of said company was turned over to affiant as president thereof, excepting

the books, papers, muniments of title and certain other of the personal property belonging to said company which were taken away and secreted by said Tillotson; and that said railway company obtained from the court of common pleas of Ottawa County a restraining order enjoining Tillotson from interfering with the company's peaceable enjoyment of the possession and control of said Put-in-Bay Waterworks, Light and Railway Company, its property and business, such order to take effect upon the plaintiff giving an undertaking, as provided by law, in the sum of $5000, to the satisfaction of the clerk of said court.

Afterwards, on November 12, 1892, an affidavit of one F. S. Terry, as manager and attorney of complainant company, was filed in the present case, in which, among other things, it was stated that the Electric Supply Company was induced to include all sums due for material furnished for use of the Hotel Victory Company in its account against said railroad; that the amount actually used in the construction of the Put-in-Bay Waterworks, Light and Railway Company amounted to $861.23; that the balance of said material, to the amount of $1925.81, was used inside of said Hotel Victory; that all of said material was ordered by said defendant Tillotson, as vice president of said defendant corporation, and was charged upon the books of the plaintiff corporation to the said Put-in-Bay Waterworks, Light and Railway Company.

On December 22, 1892, the court overruled the motion to dismiss the receiver and to modify the order to said receiver to issue certificates; and an order was made, on the further petition of the receiver, allowing him to issue additional certificates to the amount of $5000.

On January 20, 1893, an appeal from the decree of the Circuit Court overruling the motion to discharge the injunction and to modify the order authorizing the receiver to issue certificates, and retaining jurisdiction, was taken by the Industrial and Mining Guaranty Company, a corporation of New Jersey, and one of the defendants in the cause, to the Circuit Court of Appeals for the Sixth Circuit; and, on June 22, 1893, that court reversed the decree of the Circuit Court, the injunction was dis-

solved and the cause was remanded to the Circuit Court with directions for further proceedings in conformity with the opinion of the Circuit Court of Appeals. 58 Fed. Rep. 732, 746.

On December 14, 1893, the Circuit Court, in pursuance of the mandate from the Circuit Court of Appeals, dissolved the injunction theretofore granted on the cross bill of Tillotson, and, on December 28, 1893, appointed Irvin Belford a special master commissioner for the purpose of examining the accounts of the receiver, with particular reference to the disposition made by him of the proceeds of the certificates, and also to report the expenses found by the master to have accrued to the defendants, or any of them, and the reasonable compensation to which the receiver was entitled, etc.

On March 31, 1894, Irvin Belford, the special master, filed his report in the Circuit Court, in which he found that the receipts of the receiver from all sources amounted to the sum of $12,230.90, whereof $8776.10 were from proceeds of receiver's certificates, and his expenditures amounted to the sum of $11,969.58, leaving a balance of cash on hand of $261.32. The master further found that the reasonable compensation to which the receiver was entitled was $2200; of which $1200 were for his personal services, and $1000 for his attorney's fees. He also found that the expenses and costs incurred by the defendant, the Industrial and Mining Guaranty Company, consisting principally of attorney's fees, amounted to the sum of $8795.25.

Subsequently, on June 12, 1894, the Circuit Court made the following order:

"This day this cause came on for further hearing upon the motion of the Industrial and Mining Guaranty Company, the Put-in-Bay Waterworks, Light and Railway Company and John P. Carrothers, to dismiss this cause for want of jurisdiction. And the court, having heard the evidence and the arguments of counsel, and being now fully advised in the premises, does grant said motion conditionally.

"It is therefore ordered, adjudged and decreed that, upon the payment into court of the amount due on the certificates issued by L. S. Baumgardner, heretofore appointed receiver herein, or the filing herein of said certificates, duly paid and

cancelled on or before the 30th day of June, 1894, and the payment to the clerk of this court of the costs in this case, including the compensation of the receiver, which is now taxed at the sum of $1200.00, and the compensation of receiver's counsel, which is now taxed at the sum of $1000, said cause be, and the same is, hereby dismissed."

On December 5, 1894, Arbuckle, Ryan & Company moved the court to dismiss the cause in compliance with the order previously made that said cause be dismissed when the receiver's certificates were paid, because, as alleged, that said certificates have been paid in full, but that Walker P. Hall and James E. Hutton, the holders of said certificates, have failed and refused to bring the same into court to have them cancelled, etc.

On March 1, 1895, the following order was entered:

" This cause came on to be heard on the motion of Arbuckle, Ryan & Company to compel the holders of the receiver's certificates heretofore issued under the orders of this court herein to deliver them up to be cancelled and to dismiss said cause; the order to Walker P. Hall and James E. Hutton to show cause why said receiver's certificates should not be cancelled; the answer of Walker P. Hall to said citation to show cause, and the evidence was argued by counsel; and the court, being fully advised in the premises, finds that the said Walker P. Hall purchased said certificates for full value and in good faith, relying upon the orders of this court and is the present owner and holder thereof; that the same have not been paid, nor has anything been paid to the said Walker P. Hall on account thereof, and that they are still a first lien upon all of the property and franchises of the defendant company, the Put-in-Bay Waterworks, Light and Railway Company, and that said cross petitioners are not entitled to have said cause dismissed until said receiver's certificates and expenses and the costs of this cause are paid in full."

On October 5, 1895, a motion was made by the Put-in-Bay Waterworks, Light and Railway Company to dismiss said action and to direct the receiver theretofore appointed to forthwith deliver the property of the company in his possession and under his control, etc.

On May 6, 1896, Judge H. F. Severens entered an order fixing May 14 for the hearing of said motion, and further ordering that any other party or parties who might be interested in the action of the court to be taken upon said motion should have leave to intervene. and be heard at said hearing.

On June 4, 1896, Judge Severens entered an order containing, among other things, the following:

" I am further of the opinion that the motion heretofore made upon the petition of the Put-in-Bay Waterworks, Light and Railway Company, directing the receiver to surrender the property in his hands and dismissing the suit, should be denied, my opinion being that there are certain charges incurred in the receivership, the extent of which is not now determined, which must be ascertained and satisfied before the property can be released and the case dismissed, even if the case be dismissed and the property surrendered, this order, however, to be without prejudice to a renewal of a like application and motion when the situation of the case shall be ripe for a dismissal."

On June 25, 1896, the defendant company filed another petition, renewing its motion that the receiver should be directed to surrender to the company the property in his possession, which petition contained, after certain recitals, the following paragraphs:

" Your petitioner further represents that it is ready and willing and hereby tenders to the court a good and sufficient bond for the payment of all charges incurred in said receivership that may be finally determined a first and prior lien upon the property of your petitioner.

" Wherefore your petitioner prays that an order may be entered in this cause directing the receiver to forthwith deliver to your petitioner all of the property of your petitioner of every kind and description now in his custody or under his control by virtue of his appointment as receiver aforesaid, upon the filing by your petitioner of the bond hereinbefore tendered and the approval thereof by the court. . . . Your petitioner further prays that a reference be had for the purpose of ascertaining the amount of the charges incurred by the receiver herein with particular reference as to the disposition made by the receiver

of the proceeds of the receiver's certificates heretofore issued in this action, the purposes for which, the persons to whom and the dates the same were made; that said reference shall include the ascertainment of any other charges made in said receivership and the purposes for which the same were created."

Whereupon, on July 15, 1896, Judge Severens entered an order granting the railway's petition for restoration of property upon giving a bond of $20,000, to be approved by the clerk of the court, for the use and benefit of the parties who might hereafter be entitled thereto, and providing that the obligors of said bond should bind themselves to secure the payment of all charges incurred in the receivership in this action, including his certificates aforesaid, which might finally be determined to be a lien upon the property of said railway company, and should, in giving this bond, submit themselves to the jurisdiction of the court to the end that the court might make such bond effectual for the collection of said charges by order or decree in this cause, etc.

On April 17, 1897, the following order was entered:

"It appearing under the decree ordered herein on July 15, 1896, providing for a restoration of the property in the hands of the receiver, L. S. Baumgardner, heretofore appointed in this cause, to the defendant, the Put-in-Bay Waterworks, Light and Railway Company, upon the said company filing a bond as provided in said decree, and further under the decree of January 6, 1897, extending the time for the filing of said bond to March 1, 1897, that said defendant, the Put-in-Bay Waterworks, Light and Railway Company, has not filed said bond: Now, therefore, it is hereby ordered and decreed that the said decree of July 15, 1896, be and it is hereby set aside and held for naught."

Several further motions were made not necessary now to mention, and finally on January 31, 1898, the court filed an opinion finding that there was not a sufficient available fund in the hands of the receiver with which to satisfy the receiver's certificates and other necessary charges, and that it was necessary to sell the railroad and other real estate and fixtures belonging to the works of the Put-in-Bay Waterworks, Light and Railway Company, in order to raise a fund necessary to com-

pletely satisfy the charges, and accordingly directed notice to be given to the several intervening parties.

Pending these proceedings, the Atlantic Trust Company, a corporation and citizen of the State of New York, on March 7, 1898, asked and obtained leave to file an intervening petition or complaint against the defendant railway company, wherein it was alleged that said intervening company was the holder as trustee of certain bonds of said railway company aggregating $125,000, secured by a deed of trust or mortgage, bearing date June 16, 1892, on all the property, railroad and franchises of said railway company; that said bonds were in default and unpaid; and thereupon prayed that said mortgage be declared a lien on said property and be foreclosed.

On November 21, 1898, the Put-in-Bay Waterworks, Light and Railway Company filed a demurrer to the intervening petition of the Atlantic Trust Company, which demurrer was on January 31, 1899, overruled.

On December 12, 1899, the Circuit Court, Hon. Horace H. Lurton, Circuit Judge, and Hon. Henry F. Severens, present, entered an order containing, among other things, the following:

"It appearing to the court that there has been filed in this cause no plea or answer to the intervening petition of the defendant Atlantic Trust Company, or to its amendment thereto, and that each and every of the defendants and the complainant are in default thereof: Now, therefore, on this 12th day of December, 1899, came the said Atlantic Trust Company, by its solicitors, H. Van Campen, Jr., and Swayne, Hayes and Tyler, and on its motion, it is ordered that the said intervening petition and amendment thereto be taken *pro confesso* as to all parties to this action—reserving, however, to the defendant, the Bodefield Belting Company, without further pleading herein, the right to present for the further consideration of the court and its orders thereon all or any question as to the priority of the lien claimed by said the Bodefield Belting Company over the said lien of said Atlantic Trust Company."

And thereupon, on the same day, Irvin Belford was appointed as special master to ascertain and report the number and owner-

ship of bonds secured by said mortgage, and the amount of principal and interest due thereon.

On December 15, 1899, the Circuit Court, present Hon. Horace H. Lurton, Circuit Judge, and Hon. Henry F. Severens, District Judge, entered the following decree or order of sale:

" It being made to appear to the court that there is now past due and unpaid on the receiver's certificates heretofore issued under the order and direction of the court in this case the sum of $7996.10, which amount represents the balance due on all of said certificates now outstanding up to this date and shall bear interest hereafter at seven per cent, all of which certificates have been deposited with the clerk of this court, and which amount and the costs of this case taxed and taxable against the defendant the Put-in-Bay Waterworks, Light and Railway Company, to wit, the sum of $——, the court finds are the first and best lien on all the property of the said defendant, the Put-in-Bay Waterworks, Light and Railway Company, and there being no income or moneys available in the hands of the receiver sufficient to provide for the payment of said certificates and costs, it is accordingly ordered, adjudged and decreed that unless said defendant or some party in interest pay or cause to be paid to the clerk of this court the amounts so as aforesaid found due for receiver's certificates and the costs, as aforesaid, together with the sum of $15,033.44, being the amount due as found by this court in a prior order in this case on the amended intervening petition of Arbuckle, Ryan & Company, with interest computed to the date of this decree, and the sum of $784.85, being the amount found due in a prior order of this court on the intervening petition of Barbour & Starr, with interest computed to the date of this decree, and the sum of $486.88, being the amount found due in a prior order of this court on the intervening petition of the Bodefield Belting Company, with interest computed to the date of this decree, within thirty days from the date of this decree, all of the property of the defendant, the Put-in-Bay Waterworks, Light and Railway Company, hereinafter more specifically described, and all of the right, title, and interest and equity of redemption of said defendant, the Put-in-Bay Waterworks, Light and Railway Company, and each and every party to

this action in and to the said property and in and to all property which has since the date of the filing of the petition herein been acquired by said the Put-in-Bay Waterworks, Light and Railway Company or by the receiver appointed by this court or which may hereafter be acquired prior to the sale hereinafter provided for, shall be offered for sale and sold by and under the direction of Mathias A. Smalley, who is hereby appointed special master for the purpose, in the manner hereinafter directed, to satisfy the amounts due, as aforesaid, for said receiver's certificates, and costs, and also to satisfy the amounts found due as aforesaid, on the amended intervening petition of Arbuckle, Ryan & Company and the intervening petitions of Barbour & Starr and the Bodefield Belting Company, and that the property ordered to be sold under this decree shall be sold in accordance with the course and practice of this court at public sale to the highest bidder for cash, at the courthouse of Ottawa County, Ohio, at Port Clinton, in said county, being the county in which said property is situate, and that notice of the time and place of such sale shall be given by said Mathias A. Smalley, special master, as aforesaid, by advertisement thereof published once a week for at least four weeks prior to said sale in at least one newspaper printed, regularly issued, and having a general circulation in said Ottawa County, which said notice shall describe the property to be sold.

" It is further ordered, adjudged, and decreed that the said special master in making such sale shall first offer for sale all the right, title, and interest of the defendant the Put-in-Bay Waterworks, Light and Railway Company in and to the railroad, so called, of the said defendant, the Put-in-Bay Waterworks, Light and Railway Company, including therein the line of railway cars, motors, apparatus, tracks, side tracks, switches, turnouts, poles, wires, and other apparatus, together with the franchises, easement, and rights of way connected therewith or appurtenant thereto, not part of, however, or belonging to the powerhouse property, so called, hereinafter described, provided that no bids for said above-described property, when thus offered separately, shall be received for less than a sum equal to the amounts found due, as aforesaid, upon receiver's certificates and the costs hereinbefore provided; and provided fur-

ther, however, and it is hereby ordered, that if within thirty days from the date of this decree the said defendant, the Put-in-Bay Waterworks, Light and Railway Company, or any party in interest herein, pay or cause to be paid to the clerk of this court the amount so, as aforesaid, found due on said receiver's certificates, together with the costs of this action, as hereinbefore adjudged, then said marshal shall not expose or offer for sale under this decree the railroad property as above described. In case said railroad property, so called and above described, shall be separately offered for sale under the above terms of this decree and the amount bid therefor shall equal the amount of said receiver's certificates and costs aforesaid, then said special master shall sell the aforesaid property to the highest and best bidder therefor, and thereupon shall next offer for sale and sell to the highest and best bidder for cash all the right, title, and interest of the defendant the Put-in-Bay Waterworks, Light and Railway Company in and to the remainder of the property of the said the Put-in-Bay Waterworks, Light and Railway Company, to wit, the powerhouse property, so called, being lots numbers four hundred and seventy-one (471), four hundred and seventy-two (472), four hundred and seventy-three (473), four hundred and seventy-four (474), and four hundred and seventy-five (475) of Victory Park addition, in Put-in-Bay or South Bass Island, Ottawa County and State of Ohio, together with all the buildings and appurtenances thereon, including the plant, machinery, apparatus, and fixtures attached to or contained in said buildings or either of them, provided that no bid for said powerhouse property as above described shall be received for less than $10,000.

" It is further ordered that if in accordance with the terms of this decree, as hereinabove set forth, separate offer of the aforesaid railroad company, so called and as hereinabove described, shall be made, and the sum bid therefor shall not, however, be equal to the amount found due, as aforesaid, upon said receiver's certificates and the costs aforesaid, then separate sale thereof shall not be made, but in lieu of said offer of the remainder of the property of said defendant, the Put-in-Bay Waterworks, Light and Railway Company, as provided by the terms of this

decree hereinabove set forth, said special master shall forthwith offer for sale and sell for cash to the highest and best bidder therefor all the property of the said defendant, the Put-in-Bay Waterworks, Light and Railway Company above described, including both the railroad property, so called, and the power-house property so called, as hereinabove described, as a unit, but no bid therefore as a unit shall be received for less than $16,500.

"It is further ordered, adjudged, and decreed that the said special master return the proceeds of said or any of said sales into the registry of this court, to be there held subject to the further order of this court.

"It is further ordered and directed that the said special master make report of his acts and doings under this decree with all convenient speed after said sale or sales shall have taken place.

"The court hereby reserves for further consideration as between Atlantic Trust Company and the Bodefield Belting Company any and all questions arising between them as to the priority of their respective liens, and the court further expressly reserves for its further consideration all matters not herein expressly provided for."

On March 2, 1900, the report of M. A. Smalley, special master in chancery, was filed, showing that on February 24, 1900, he had sold to J. W. and C. W. Ryan, at public auction, for the sum of $16,501, all the property of the said defendant, the Put-in-Bay Waterworks, Light and Railway Company; and on March 8, 1900, the court approved the said report and sale *nisi;* and on March 26, 1900, no exceptions or objections to the sale having been filed by any of said parties, it was ordered that the said order confirming said sale was made absolute, and the special master directed to immediately execute a deed for the property so sold by him to the purchasers.

On June 8, 1900, an order or decree of distribution was made, containing, among other things, the following:

"This day came Arbuckle, Ryan & Company, the Bodefield Belting Company, Barbour & Starr, the Put-in-Bay Waterworks, Light and Railway Company, Walker P. Hall, L. S.

Baumgardner, receiver, and Atlantic Trust Company, by their respective counsel, and thereupon this cause was heard upon the motion of Walker P. Hall for an order releasing the bond by him heretofore given conditioned for the repayment of any moneys by him received from the receiver herein should he be ultimately found not entitled thereto.

"In consideration whereof the court, being duly advised in the premises, doth find that the condition of said bond has been fully satisfied, and that the same should be cancelled and discharged, but retained in the custody of the court.

"It is therefore ordered and adjudged by the court that said bond be, and the same hereby is, cancelled and discharged, and the said Walker P. Hall and his surety are hereby released from any and all liability thereon.

"And thereupon this cause was further heard upon the motion of the said Walker P. Hall for an order of the court directing the clerk to pay the said Walker P. Hall out of the moneys in the registry of the court and arising from the sale of the property of said defendant, the Put-in-Bay Waterworks, Light and Railway Company, the sum of $2400, claimed to have been paid by him on the 28th day of July, 1894, to said L. S. Baumgardner, as receiver, in liquidation of the allowances theretofore made said receiver and his counsel, together with certain expenditures by said receiver made, and was argued by counsel.

"In consideration whereof the court, being duly advised in the premises doth find that said motion is not well taken and should be denied.

"It is therefore ordered and adjudged by the court that said motion be, and the same hereby is, overruled at the costs of said Walker P. Hall.

"Thereupon this cause was further heard upon the fifth and final report of said receiver, L. S. Baumgardner, heretofore appointed herein, and was submitted to the court.

"In consideration whereof and upon examination thereof the court finds the same to be, in all respects, true and correct, and it is therefore ordered and adjudged by the court that the same be, and it is hereby, approved and confirmed.

" And the court doth further find that all the property of the said defendant, the Put-in-Bay Waterworks, Light and Railway Company, has been sold and delivered to the purchaser thereof, and that there is no further deed for a receiver herein.

" The court does further find that said receiver and his counsel, Doyle & Lewis, have performed valuable services in the care and preservation of the property of said defendant since the last allowance made them herein. It is therefore ordered and adjudged by the court that out of the funds in his hands said receiver be allowed, and he is hereby authorized to pay unto himself, in full of his compensation for such services, the sum of $200 ; to Doyle & Lewis, his said counsel, the sum of $300, in full payment for the services rendered him as such receiver, and to the clerk of this court the balance remaining in his hands, to wit, the sum of $269.18, to be applied by said clerk in part payment of the costs herein incurred.

" It is further ordered and adjudged by the court that upon making said payment of said sum to said clerk, and upon filing with the clerk of this court proper receipts, evidencing the disbursements by him made, as set forth in his said final account, said receiver shall stand discharged from all further duties and obligations as such receiver, and that the condition of said bond by him heretofore filed herein as such receiver be satisfied and said receiver and his surety be relieved from all liability thereon.

" And thereupon this cause was further heard upon the petition of Arbuckle, Ryan & Company, one of the intervenors herein, for an order of the court distributing the proceeds arising from the sales of the property of the Put-in-Bay Water works, Light and Railway Company, heretofore made in accordance with the former order of this court, and was argued by counsel.

" In consideration whereof the court, being duly advised in the premises, doth find that the prayer of said petition should be granted.

" It is therefore ordered and adjudged by the court that the clerk of this court be, and he hereby is, ordered and directed to forthwith distribute the moneys in the registry of the court and arising from said sales aforesaid in the following manner, to wit:

" I. To the clerk of this court the costs of this suit and remaining unpaid, including the sum of $175 to the special master commissioner hereby allowed as his compensation for his services by him rendered in selling said property, and the further sum of $54.30, hereby allowed him for the expenses and expenditures by him incurred in connection therewith, which said amounts shall be paid said master commissioner.

" II. To the owner or owners of receiver's certificates, heretofore issued herein, upon the surrender and cancellation thereof, the amount heretofore found to be due thereon, to wit, $7966.10, together with interest thereon, at the rate of 7% per annum, from the 13th day of December, 1899, to the date when this order shall finally take effect.

" III. To the county treasurer of the county of Ottawa and State of Ohio the sum of $591.66, being the taxes and assessments levied and assessed against the property of said the Put-in-Bay Waterworks, Light and Railway Company for the year 1899.

" IV. The one hundred one hundred sixty-fifth part of the balance remaining to Arbuckle, Ryan & Company, the Bodefield Belting Company and Barbour & Starr, pro rata, in proportion to the amounts heretofore found due them respectively.

" The balance, after the payments aforesaid, to wit, the sum of $——, shall be retained in the registry of the court to await its further and final order.

" And thereupon this cause was further heard, upon the motion of the Atlantic Trust Company, trustee, for leave to withdraw its petition filed herein for allowance of compensation; which leave is given, and the same is accordingly done, without prejudice, however, to the rights of said trustee to hereafter file its petition therefor.

" To all the foregoing order and decree the said the Put-in-Bay Waterworks, Light and Railway Company, by its counsel, excepts on the ground that the court is without jurisdiction in the premises, for the reason that it appears by the record herein that this suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said court, and the parties to said suit were improperly and collusively

joined for the purpose of creating a case cognizable by said
Circuit Court under the act of Congress of March 3, 1875, as to
which question of jurisdiction an appeal has been taken by the
said the Put-in-Bay Waterworks, Light and Railway Company
to the Supreme Court of the United States, at Washington."

On June 2, 1900, an appeal was allowed in the following
terms:

"The former appeal prayed by the above-named appellant,
the Put-in-Bay Waterworks, Light and Railway Company, and
allowed by me on the 23d day of February, 1900, having been
discontinued, and the said appellant having now presented a
new petition praying for the allowance of an appeal from the
decrees of this court made on the 12th, 13th and 15th days of
December, 1899, said petition is now granted and the appeal is
allowed.

"And thereupon, on the request of Walter L. Granger, of
counsel for the appellant, I do hereby certify to the Supreme
Court of the United States that upon the hearing of the said cause,
wherein the said decrees so appealed from were entered, as well
as upon various interlocutory hearings during the progress of the
cause, the said appellant denied the jurisdiction of the court
over said cause and contended that the court was without juris-
diction upon the grounds that the amount in controversy was
in truth and in fact much less than the sum of two thousand
dollars ($2000), exclusive of interest and costs, and that the
case had been fraudulently and collusively instituted by the par-
ties thereto for the purpose of creating the appearance of juris-
diction not in fact existing; which contention, so far as related
to the receiver's certificates and the intervening petitions, was
overruled.

"And it is accordingly certified that the appeal herein allowed
is granted for the single purpose of presenting to the said Su-
preme Court the question whether the Circuit Court had juris-
diction to entertain the said cause and render the decrees so ap-
pealed from.

"The clerk is therefore directed to certify to the United
States Supreme Court, at Washington, the portions of the rec-
ord in said cause appertaining to said jurisdictional question

upon the appellant executing a bond for costs in the sum of five hundred dollars ($500).

"H. F. SEVERENS, *Circuit Judge.*"

*Mr. Joseph B. Foraker* and *Mr. Walter L. Granger* for appellant.

*Mr. J. K. Hamilton* and *Mr. William C. Cochran* for appellees.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

The contention in the brief on behalf of the appellant, that "by the service of the writ of replevin issued from the state court the property came into the custody and possession of that court for all purposes of jurisdiction in that case, and no other court had a right to interfere with that possession except a court having a direct supervisory control over the court issuing the writ, or some superior jurisdiction in the premises, the state court having placed the property in the possession of the officers of the railway company as against the claim of Tillotson, by a writ of replevin, the United States Circuit Court in this case had no jurisdiction to issue an injunction or to appoint a receiver, by means of which the company and its officers were prevented from using and operating the railway property, which the state court had directed its officers to place in their hands," seems to answer itself.

By the operation of the writ of the state court certain personal property of the Put-in-Bay Waterworks, Light and Railway Company was taken from the possession of one Tillotson and restored to that of the company, and by a restraining order Tillotson was prohibited from interfering with the use and operation by the company of its railway property. Whatever, then, may have been the nature or merits of the questions between the railway company and Tillotson, it is conceded that the actual possession of the property, whether real or personal, was in the railway company at the time when, in the suit of the Electrical Supply Company, the receiver was appointed by the

Circuit Court of the United States. It is too plain for argument that the replevin suit, affecting only certain articles of personal property, and arising out of a controversy between the railway company and Tillotson, its vice president, could not draw into the jurisdiction and control of the state court the railroad and franchises of the railway company, so as to preclude creditors of the company from instituting proceedings in the Federal court. As respects the restraining order, if such were ever issued, it does not appear that Tillotson ever disobeyed it, and, if he did, he personally would be answerable to the state court. It may be further observed that it is not made to appear that the restraining order ever became operative as an injunction by the filing of a bond in $5000, which was imposed as a condition for its issuance. At all events, and conclusively as to the merits of this contention, the property and franchises which are the subject-matter of the present suit were not, either actually or constructively, in the possession of the state court when the Federal court appointed its receiver.

Our inspection of this record has not constrained us to hold that the Circuit Court lost its apparent jurisdiction of the case by reason of disclosures made subsequently in the progress of the case. The mere denial that the materials sold by the complainant to the railway company were of the value alleged in the bill did not, of itself, deprive the court of jurisdiction. Thereby was presented a question of fact into which the court had jurisdiction to inquire. Within the letter of the statute there was a controversy between citizens of different States, in which the matter in dispute was over the sum or value of two thousand dollars.

The fifth section of the act of March 3, 1875, 18 Stat. 470, provided that if in "any suit commenced in a Circuit Court, . . . it shall appear to the satisfaction of said Circuit Court, at any time after such suit has been brought, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court, the said Circuit Court shall proceed no further therein, but shall dismiss the suit."

And it has been several times decided by this court that a

suit cannot properly be dismissed by a Circuit Court as not involving a controversy of an amount sufficient to come within its jurisdiction unless the facts, when made to appear on the record, create a legal certainty of that conclusion. *Barry* v. *Edwards*, 116 U. S. 550 ; *Wetmore* v. *Rymer*, 169 U. S. 115.

It is not clearly shown in this record that, at any time after the suit was brought, it was made to appear, *to the satisfaction of the Circuit Court*, that the suit did not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court. On the contrary, it appears that the Circuit Court was not so satisfied, but overruled complainant's motion to dissolve the preliminary injunction and to discharge the receiver. Thereupon the cause was taken on appeal to the Circuit Court of Appeals, and that court directed that the preliminary injunction granted by the Circuit Court should be dissolved, but held that, on that appeal, the Circuit Court of Appeals had no jurisdiction to proceed further, and was without power to direct a dismissal of the bill or to vacate the order appointing a receiver.

It is true that observations were made by the judges of that court, based on affidavits made in the court below, that jurisdiction had been collusively obtained by reason of false statements of the amount of materials sold by the complainant to the defendant company, and they seem to have thought that by such affidavits the Circuit Court had been made to know that its equitable jurisdiction had been improperly invoked. *Industrial, etc., Co.* v. *Electrical Supply Co.*, 58 Fed. Rep. 733, 744.

But such observations of the learned judges did not have the force of a decision, nor did they undertake to direct the Circuit Court to dismiss the bill for want of jurisdiction.

It further appears that, upon the filing of the mandate of the Court of Appeals in the Circuit Court, the counsel of complainant filed a motion to dismiss the bill, and claimed that the Court of Appeals had decided that the Circuit Court had no jurisdiction. This and subsequent motions to the same effect were overruled by the Circuit Court, and the Circuit Court of Appeals denied an application for a writ of mandamus. 90 Fed. Rep. 831.

Pending these proceedings and before the final decree of sale, the Atlantic Trust Company filed an intervening petition, alleging its ownership as trustee of one hundred and twenty-five mortgage bonds of the defendant company; that there was the sum of $40,250 due and unpaid on account of said indebtedness, and praying for an account and for a decree of foreclosure and that the lien of said trust company should be decreed to be a lien prior to those of the other creditors. As already stated, the Circuit Court overruled the defendant's demurrer to this intervening petition, and on December 12, 1899, the court entered an order that said intervening petition should be taken *pro confesso*, and appointing a master to ascertain and report the amount and ownership of the outstanding mortgage bonds. And subsequently, on December 15, 1899, the final decree or order of sale was entered, in which the court reserved for further consideration, as between the Atlantic Trust Company and the Bodefield Belting Company, any and all questions arising between them as to the priority of their respective liens. A sale of all the property of the defendant railway company, in pursuance of said decree, was made on February 24, 1900; and, no objections or exceptions to the sale having been filed by any of the parties, on March 26, 1900, the sale was confirmed absolutely, and the master directed to execute a deed for the property so sold by him to the purchasers.

It appears that, under the intervening petitions of other creditors than the complainant, there were involved, before and at the time of the decree of sale, liens and claims against the defendant's property largely in excess of the amount necessary to confer plenary jurisdiction on the Circuit Court. Jurisdiction having attached under the allegations of the original bill, and the court having proceeded, in a proper exercise of its discretionary power, to appoint a receiver and to authorize a large expenditure of money raised by certificates, in order to protect and preserve the property in its custody, and the court having also, in the exercise of its power as a court of equity, allowed the intervention of other creditors, as between some of whom and the defendant company there was jurisdiction in the court, both as respects diversity of citizenship and amount of claims,

we think its jurisdiction did not fail by reason of anything that appeared in *ex parte* affidavits filed on behalf of the defendant company, denying the truth of the allegations contained in the original bill in respect to the amount in dispute.

In *Krippendorf* v. *Hyde*, 110 U. S. 283, it was said : " The equitable powers of courts of law over their own process, to prevent abuses, oppression and injustice, are inherent and equally extensive and efficient, as is also their power to protect their own jurisdiction and officers in the possession of property that is in custody of the law. *Buck* v. *Colbath*, 3 Wall. 334 ; *Hagan* v. *Lucas*, 10 Pet. 400. And when, in the exercise of that power, it becomes necessary to forbid to strangers to the action the resort to the ordinary remedies of the law for the restoration of property in that situation, as happens when otherwise conflicts of jurisdiction must arise between courts of the United States and of the several States, the very circumstance appears which gives the party a right to an equitable remedy, because he is deprived of a plain and adequate remedy at law ; and the question of citizenship, which might become material as an element of jurisdiction in a court of the United States when the proceeding is pending in it, is obviated by treating the intervention of the stranger to the action in his own interest as what Mr. Justice Story calls, in *Clarke* v. *Matthewson*, 12 Pet. 172, a dependent bill."

Circuit Judge Severens, in his opinion in the present case, aptly referred to the case of *Gumbel* v. *Pitkin*, 124 U. S. 132, as containing an elaborate exposition of the principles upon which a court of equity may proceed when the rights of intervening creditors are to be dealt with, and upon which principles the Circuit Court proceeded in this case.

We fail to perceive any equities in the position of the appellant company. All its creditors, as well the original complainant as the several intervening creditors, have acquiesced in the action of the Circuit Court and have availed themselves of the remedy afforded by the sale of the defendant's property. Having failed and declined to accept the opportunity afforded by an interlocutory order to regain possession of its property, by giving a bond to pay such charges as the court should de-

termine to be just and proper, and not having offered, at last, to pay the claims and liens adjudged to be just and proper, the defendant company seems to us to have suffered no injustice. However this may be, the case is before us only on the question whether the Circuit Court had jurisdiction to entertain the said cause and render the decrees so appealed from, and this we answer in the affirmative, and direct the appeal to be dismissed with costs.

*Let it be so certified.*