## ROBERTS v. UNITED CARBON CO.
### No. 7669.

Circuit Court of Appeals, Fifth Circuit.

June 8, 1935.

G. P. Bullis, of Vidalia, La., for appellant.

Charles Titche and H. D. Montgomery, both of Monroe, La., for appellee.

R. H. Oliver, Jr., S. L. Digby, Allan Sholers, and Geo. Gunby, all of Monroe, La., amici curiæ.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

James M. Roberts sued United Carbon Company for damages for alleged breaches of the latter's obligations as assignee of an oil and gas lease on 60 acres of Louisiana land. His suit was held to be one at law, and was dismissed upon an exception of no cause of action. The exhibited lease is of an ordinary type, to last five years, or so long as oil or gas is produced. It is dated November 16, 1926, and provides for its termination at the end of a year unless a well is commenced by that time or $60 is paid as rental to defer drilling for another twelve months, and so for subsequent years. One-eighth of the oil produced and saved is to be delivered as royalty to the lessor; and for gas utilized and sold "one-eighth of the value of such gas calculated at the rate of three cents per thousand cubic feet corrected to two pounds above atmospheric pressure." The petition states that United Carbon Company acquired the lease February 16, 1929, and drilled one well which up to May 1, 1931, had produced 69,222,000 cubic feet of gas, for which $1,926.55 had been paid as royalty. It claims that $150.11 was retained wrongfully as a state severance tax, and that the price of the gas should have been calculated on a basis of 12 cents per thousand cubic feet, which was its true value; that gasolene vapor has accompanied the gas, producing gasolene worth $16 per million feet of gas, for

which plaintiff has been paid nothing; that during said period gas has been drained away by other wells, and especially by the uncontrolled flow of the Thomason Crater a quarter of a mile away, wasting 40,000,000 cubic feet per day, so that the gas pressure under and the gas that can be taken from plaintiff's land has been reduced to one-third what it was on February 16, 1929. It is alleged that United Carbon Company, as lessee since the last-named date, by reason of an implied covenant, "was obligated to protect plaintiff by drilling sufficient wells and procuring therefrom sufficient gas not only to offset the wells draining plaintiff's land, but also to place plaintiff on an equal basis of production and royalties with other landowners similarly situated. Said obligation requires that defendant produce from plaintiff's land an average of not less than four million cubic feet of gas per day." Plaintiff has made repeated demands on defendant to comply with its obligation, but defendant has neglected and refused to comply.

■ No cause of action for an amount within the court's jurisdiction was sufficiently alleged. The Supreme Court of Louisiana has held that the lessor, even when his royalty is payable not in oil or gas, but in money, owes his part of the severance tax. Wright v. Imperial Oil & Gas Products Co., 177 La. 482, 148 So. 685. The status of the vaporized gasolene brought up with natural gas under a lease which makes no special provision for it was considered in Gilbreath v. States Oil Corporation (C. C. A.) 4 F.(2d) 232, and in Wemple v. Producers' Oil Co., 145 La. 1031, 1047, 83 So. 232, 237, and the gasolene was held to be oil on which a royalty was due as such; but according to this petition only about $1,100 worth of such gasolene has been produced, and plaintiff's share in that would not support federal jurisdiction. We pass to the larger items touching the additional amount and price of gas for which defendant as lessee is sought to be charged.

■ The provision of the lease as to price controls: Had it read "one-eighth of the value of such gas" it would have meant the value at the time and place of production. The contracting parties, foreseeing dispute as to that, made an additional agreement that the value should be "calculated at the rate of three cents per thousand cubic feet corrected to two pounds above atmospheric pressure." We find neither contradiction nor ambiguity in these provisions. They mean that the lessor is to get as royalty not gas, but its value taken at 3 cents per thousand cubic feet with volume corrected to the agreed pressure. The agreement binds both parties for the life of the lease. The petition does not deny that it has been carried out as respects the gas actually produced. The main contention is that vastly more gas should have been produced and has been lost by drainage to other wells and especially to the Thomason Crater. It is not denied that in Louisiana where a lease on royalty is silent on the point there is an implied condition or covenant that when the existence of oil or gas in paying quantities is made apparent the lessee shall put down as many wells as may be reasonably necessary to secure the product for the common advantage of lessor and lessee. Caddo Oil & Mining Co. v. Producers' Oil Co., 134 La. 701, 64 So. 684. Such is the general rule. Sauder, Adm'x v. Mid-Continent Corporation, 292 U. S. 272, 54 S. Ct. 671, 78 L. Ed. 1255, 93 A. L. R. 454. The contention is over the remedy available for a breach of the obligation. In the last-cited case, the duty of continued exploration after production from part of the leased land was enforced by a cancellation in equity after a time given to comply, on the ground that a remedy by damages was not adequate. Brewster v. Lanyon Zinc Co. (C. C. A.) 140 F. 801, was approved and followed. See, also, Cosden Oil Co. v. Scarborough (C. C. A.) 55 F.(2d) 634. In a case from Texas, Humphreys Oil Co. v. Tatum (C. C. A.) 26 F.(2d) 882, we upheld a verdict for damages where the lessee himself had drained the leased lands by other wells of his. The Supreme Court of Louisiana in recent cases has strongly maintained the impossibility of proving the damages done by drainage, insisting also on the local law that the oil and gas underground are not capable of ownership. In Louisiana Gas & Fuel Co. v. White Brothers, 157 La. 728, 103 So. 23, where a landowner sought damages against a neighbor who was wasting gas, an exception of no cause of action was sustained on those grounds, and an injunction against the waste was said to be the remedy. The case was followed, but not unanimously, in McCoy v. Arkansas Natural Gas Co., 175 La. 487, 143 So. 383, 85 A. L. R. 1147, where the landowners in a radius of a mile from the Thomason

Crater sued the owner of that wasteful well for damages, which they proposed to divide among themselves in proportion to their several acreages. The majority opinion criticised the assumptions that these landowners within a mile were the only ones affected by the waste, and that they were all affected in proportion to their acreages without reference to their nearness; it said the amount of damage was wholly speculative, and that was fatal to a suit in tort; cases from other states arising under leases were distinguished; and it was asserted that bad judgment only rather than fault was charged to the defendant. It was conceded that, though the landowners did not own the gas and oil under the lands, the value of their lands for the purpose of capturing oil and gas would be destroyed by draining them, and that some remedy was due. In McCoy v. State Line Oil & Gas Co., 175 La. 231, 143 So. 58, the suit, like this one, was by lessor against lessee and the primary 5-year period had not expired. Damages were sought for permitted drainage from March, 1928, to September, 1931, a single well having been sunk in June, 1930, and delay rental having been paid up to that time. The court sustained an exception for no cause of action on the ground that the delay rentals were fixed because of the impossibility of estimating damages for nondevelopment, and the payment of them settled for all such damages. Nothing special was said about the sufficiency of the one well to satisfy the lessee's obligations after delay rentals ceased, but its sufficiency was seemingly assumed. Whether the lease could have been canceled was left open. These cases lean strongly against a remedy by damages for drainage whether in a suit in tort or on a contract obligation under a lease. Yet we do not think they so establish a rule of local law as to compel us to hold that no remedy by damages can exist. Irrespective of divergent ideas of the ownership of oil and gas underground, in Louisiana as in Texas oil and gas leases and royalties are property and their value depends on the prospect of recovery of oil and gas. In both states it is recognized that these fugacious elements can and will be drained away by adjacent wells, and an implied duty is put on a lessee, though none be expressed, to be diligent so to use land leased on royalty as to get a fair share of production from it. Increasing knowledge and experience are likely to develop more certainty touching drainage by adjacent wells. In the case of gas, reduction of pressure is under Boyles' Law a direct measure of loss of gas. If a tract is by location and production shown to be like those around it and is denied production while surrounding wells completely exhaust the oil and gas, there would seem no want of certainty in concluding that this tract if used as it ought to have been would have produced proportionately according to its size. Whether in any case damages can be proven depends on circumstances; and especially when exhaustion is near their amount need not necessarily rest on guesswork but may be logically inferred from what has happened on other tracts similarly situated. The remedy by damages thus appears to be more easily applied when that by injunction or cancellation because of the progress of exhaustion would be too late. If the gas pressure in the adjacent field as well as under plaintiff's land has been reduced by two-thirds and the amount of gas removed can be ascertained and compared with the production from this 60 acres, there would appear to be some basis for a reasoned conclusion touching the amount of loss from mismanagement, if there was such, of this lease. But this petition fails to allege sufficient facts to show either mismanagement or any basis for ascertaining damages. As to both, it states only general conclusions. Assuming that its allegation of obligation to drill sufficient wells to secure an equal basis of production is supported by law, the only allegation of breach is that this required an average production of 4,000,000 feet per day which was not attained. No basis for this conclusion is stated, unless it be the fact that the Crater a quarter of a mile away could waste 40,-000,000 feet a day, and that fact has no tendency to show that the equal production of this 60 acres should be 4,000,000 feet. Nothing is stated as to the known extent of the field, the number of wells in it, the number per 60 acres that are successfully handled on other tracts, or the production from the field as a whole. The petition does not very distinctly assert any excess drainage by the controlled wells, but dwells on the waste at the Crater. From what it says, the natural conclusion is that this waste is the main cause of the decreased gas pressure. It does not state anything that the defendant could or should have done to stop that waste. The plaintiff had equal power with the defendant to proceed against the owner of the

Crater, and this defendant was surely not under duty to offset the Crater by wasting gas from the plaintiff's land. It is not alleged that any more gas could have been sold. A petition cannot, as against an exception for no cause of action, even when the obligations of the lessee are expressed, stop with general allegations that they have been breached, but it must set up the issuable facts that show the breach. Hart v. Standard Oil Co., 168 La. 183, 121 So. 737. This petition does not state that the sinking of additional wells would have been prudent or profitable (Cosden Oil Co. v. Scarborough, supra); nor does it state any facts from which the damage, if any, done the plaintiff can be estimated. We affirm the judgment of dismissal, without prejudice to a better suit.