## BROWN v. UNITED GAS PUBLIC SERVICE CO.

### No. 2775.

District Court, W. D. Louisiana, Monroe Division.

Aug. 4, 1939.

G. P. Bullis, of Ferriday, La., Anders & Anders, of Winnsboro, La., and A. S. Drew, of Minden, La., for plaintiff.

Sholars & Gunby, of Monroe, La., and Wilkinson, Lewis, Wilkinson & Naff, of Shreveport, La., for defendant.

DAWKINS, District Judge.

Plaintiff's suit is for the alleged value of natural gas at the price of 6¢ per thousand cubic feet or 3¢ above what he alleges has been paid, for gasoline alleged to have been extracted from said gas and for a refund of a portion of the severance taxes paid to the State of Louisiana, claimed to have been wrongfully deducted in said payments.

The demand is for a total of $4,967.25 made up as follows:

Under a lease executed in favor of the Gulf Refining Company, dated July 23, 1926 (subsequently acquired by the defendant) covering W. ½ of N. E. quarter and N. E. ¼ of N. W. ¼ of section 27, Tp. 16, N. R. 6 E. in Richland Parish, there was produced during the years 1930 to 1932, both inclusive, a total of 191,302,000 cubic feet of natural gas; and under a second lease bearing the same date to the Palmer Corporation of Louisiana, covering six acres in the S. E. ¼ of section 22, Tp. 16, N. R. 6 E., of said Parish, there was produced during the years of 1931 to 1933, both inclusive, a total of 639,868,000 cubic feet of gas. It is alleged that the said leases provided for payment of "market price" and that the defendant had paid therefor at the rate of 3¢ per thousand cubic feet, when the true market price was at all times 6¢, and the demand is for the difference or an additional 3¢ per thousand cubic feet on a grand total of 831,170,000 cubic feet (although later in the petition it is stated to be and figured as 761,518,000 at 3¢, one-eighth of which amounts to the sum of $3,116.88). The further sum of $1,903.79 is claimed as royalty on gasoline extracted from the gas at the rate of 2¢ per thousand cubic feet, as well as a refund of the severance taxes deducted in the payments previously made by the defendant, amounting to $207.79. This makes a grand total in money, according to the figures above given in the petition, of $5,228.46, whereas the prayer is for the sum of $4,976.25.

There was attached to and made part of the original petition filed in the State Court a copy of one of the leases alleged upon, to-wit, the one to the Gulf Refining Company covering the larger tract together with an amendment or the extension thereof, bearing date September 26, 1928, under which the smaller quantity 191,302,000 cubic feet of gas was produced as alleged, the original of which according to the copy attached to the petition, with respect to royalties to be paid, provided as follows:

### "Third

"If oil shall be found in paying quantities on said premises, the Lessee shall deliver as royalty to said Lessor, free of expense, one eighth (⅛) part of the oil saved from that produced: Provided, if the Lessor shall own less than the entirety of the premises the royalty shall be paid only in the proportion that his ownership is of the whole. Such delivery to be made either into tanks supplied by Lessor, with connections by Lessor provided, or into any pipe line that may be connected with the well; if said Lessee shall operate so as to save and utilize casinghead gas from said premises (as Lessee may do if Lessee

wishes), then Lessee shall pay as royalty to Lessor ⅛ of the value calculated at the rate of four (4) cents per one thousand (1,000) cubic feet, of the casinghead gas so saved, in addition to the royalty to which Lessor may be entitled on the oil produced from such well, such royalty on casinghead gas accruing in each six months' period counting from the date hereof to be paid within thirty (30) days after expiration of such period; and if any well on said premises shall produce natural gas in paying quantities, and such natural gas be used off of the premises or marketed by said Lessee, then Lessor shall be paid at the rate of One Hundred ($100.00) Dollars per annum for each and every such well, such payments to be made on or before the end of each such year. And all such money royalties may be paid to Lessor as provided in Paragraph First hereof."

In the extension or amendment of the last mentioned lease it was provided:

"If oil shall be found in paying quantities on said premises, the lessee shall deliver as royalty to said lessor, free of expense, one-eighth (⅛) part of the oil saved from that produced; Provided, if the Lessor shall own less than the entirety of the premises the royalty shall be paid only in the proportion that his ownership is of the whole. Such delivery to be made either into tanks supplied by Lessor, with connection by Lessor provided, or into any pipe line that may be connected with the well; if said lessee shall operate so as to save and utilize casinghead gas from said premises (as lessee may do if lessee wishes), then lessee shall pay as royalty to lessor ⅛ of the value calculated at the rate of four (4) cents per one thousand (1000) cubic feet, of the casinghead gas so saved, in addition to the royalty to which lessor may be entitled on the oil produced from such well, such royalty on casinghead gas accruing in each six month's period counting from the date hereof to be paid within thirty (30) days after expiration of such period, and to pay the lessor two hundred dollars ($200) each year for each well producing gas only, until such time as the gas shall be utilized or sold off the premises and at that time the royalty above named shall cease and thereafter the lessor or his assignees shall be paid ⅛ of the value of such gas calculated at the prevailing market price at the wells on two pounds pressure basis; and the lessor is to have gas free of cost from any such

well for all stoves and all inside lights in the principal dwelling house on said land during the time by making his own connections with the wells, at his own risk and expense."

It will be noted that this amendment, with respect to the natural gas, changed the royalty from "$100.00 for each and every such well" to "one-eighth of the value of such gas, calculated at the prevailing market price at the well on two pounds pressure basis * * *."

The second lease or one to the Palmer Corporation covering the six acres in section 22, from which the larger quantity of gas, to-wit, 639,860,000 cubic feet, was produced, was not attached to the petition.

This Court sustained a plea to the jurisdiction on the grounds that, in harmony with its previous rulings, the petitioner was not entitled to recover for royalties on gasoline extracted from the natural gas or for the severance taxes which had been deducted, for the reason that a fair interpretation of the contracts clearly disclosed that the lessee was to be paid the market price for the natural gas at the well, and, having taken it to some other place, to-wit, an extraction plant, and extracted gasoline, there was no provision for the lessor's being paid any royalty thereon; that the contract had specifically provided for the payment of a royalty of "one-eighth of the value calculated at the rate of 4¢ per thousand (1,000) cubic feet of the casinghead gas so saved, in addition to the royalties which lessor may be entitled to on the oil produced from such well * * *", and that by no stretch of the imagination could this provision with respect to casinghead gasoline (which is produced solely from an oil well) be applied to gasoline extracted from natural gas, from a well producing gas only, in an absorption plant. Further, that when the alleged value of the casinghead gas and of severance taxes, claimed to have been wrongfully deducted, amounting to a total of $2,111.58, were subtracted from the sum prayed for in the petition of $4,967.25, there remained only $2,855.67, which was below the jurisdiction of a Federal District Court. On appeal, however, the Court of Appeals for this Circuit reversed this ruling in a short opinion. The item of severance taxes in the meantime had been "withdrawn on appeal" and in disposing of the matter, it was said:

"Jurisdiction must be initially . determined by the amount claimed in good faith. That plaintiff may not be entitled to recover on the merits the whole or part of the claim does not necessarily defeat jurisdiction. Whether a suit is dismissed on plea or motion of defendant or by the court under the provisions of Act of March 3, 1875, now Jud.Code § 37, 28 U.S.C.A. § 80, the rule is that a suit cannot be properly dismissed as not involving sufficient amount in controversy unless the facts create a legal certainty of that conclusion. Whether plaintiff may recover on the second item of his claim is a question to be decided on the merits. That the same question may have been previously decided by the District Court adversely to his contentions does not create a legal certainty of insufficient amount involved. Wetmore v. Rymer, 169 U.S. 115, 18 S.Ct. 293, 42 L.Ed. 682; Put-In-Bay Waterworks Co. v. Ryan, 181 U.S. 409–431, 21 S.Ct. 709, 45 L.Ed. 927; Stein v. Tip-Top Baking Co., 267 U.S. 226, 45 S.Ct. 273, 69 L.Ed. 585; General Investment Co. v. New York Central R. R. Co., 271 U.S. 228–231, 46 S.Ct. 496, 497, 70 L.Ed. 920." Brown v. United Gas Public Service Company, 5 Cir., 96 F.2d 264.

Up to the time the matter had been disposed of in this Court, the second or six acre lease to the Palmer Corporation had not been filed or attached to the petition and was not a part of the record on appeal. After reversal and remand of the case on October 3, 1938, counsel for defendant filed a prayer for oyer or motion to produce this lease and on May 1, 1939, counsel for the plaintiff produced and filed a printed form, with blanks and signatures filled in on the typewriter, with an appearance signed by said attorneys in which it is recited that, "plaintiffs herein file herewith the lease described in paragraph 11 of the petition herein, with the same force and effect as if the annexed lease were annexed to their original petition herein." In again urging the plea to the jurisdiction, counsel for the defendant has apparently accepted this as a true and genuine copy.

With respect to natural gas, this last mentioned lease provides:

"2nd. To pay the lessor two hundred dollars each year for each well producing gas only, until such time as the gas shall be utilized or sold off the premises, and at that time the royalty above named shall cease, and thereafter the grantor shall be paid one-eighth (1-8) of the value of such gas calculated at the rate of 3 cents per thousand cubic feet, corrected to two pounds above atmospheric pressure, and Lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling house on said land during the same time by making his own connection with the wells at his own risk and expense.

"3rd. To pay lessor for gas produced from any oil well and used off the premises or for the manufacture of gasoline, * * * ⅛ of market value * * * for the time during which such gas shall be used, said payments to be made according to pipe line payments."

It thus appears that as to the first lease with the Gulf Refining Company, the demand for one-eighth of the additional 3¢ (6¢ per thousand cubic feet on 191,302,000, measured at 10 oz. above atmospheric pressure instead of the two pounds provided for in the lease) would amount to $717.38 and adding this sum to that of $1,903.70, claimed for royalties on gasoline as to both tracts, would make only $2,621.04. As stated, the demand for refund of severance taxes of $207.79 was "withdrawn on appeal" and it has been conclusively settled by the State Supreme Court, followed by the Court of Appeals for this Circuit, that the lessor has to pay his proportionate share of the taxes which was the part deducted and sought to be recovered. Sartor v. United Gas Public Service Co., 186 La. 555, 173 So. 103; Sartor v. United Carbon Co., 183 La. 287, 163 So. 103; Wright v. Imperial Oil & Gas Co., 177 La. 482, 148 So. 685; Roberts v. United Carbon Co., 5 Cir., 78 F.2d 39; Arkansas Nat. Gas Co. v. Sartor, 5 Cir., 78 F.2d 924.

So that, if it clearly appears from the second lease, or one to the Palmer Corporation, from which the larger amount of gas was produced, 639,868,000 cubic feet (upon which the plaintiff is similarly claiming a one-eighth of an additional 3¢ per thousand cubic feet, amounting to $1,919.-60) that no recovery under any lawful theory can be had and hence that the claim was not made in good faith, then by the settled jurisprudence of all Courts, it cannot be included to swell the amount to reach the jurisdiction of this Court.

It seems to me that the mere reading of the clause above quoted from this last lease produced and filed and made a part of the petition on May 1, 1939, demon-

strates that it was a fixed price contract at the rate of 3¢ per thousand cubic feet and there is no room for any sort of construction. It therefore follows that plaintiff cannot recover anything more than has been paid under it for the natural gas (leaving out of consideration royalties on gasoline claimed as to both tracts which have been included in the figures earlier shown in this opinion totaling $2,621.04) which payment is admitted in the petition, and that, therefore, the sum in controversy, $2,621.04, necessarily falls below the jurisdiction of this Court.

For the reasons assigned, I think the plea to the jurisdiction should be sustained.

I realize that this plea has been before the Appellate Court before, but the record was not in its present shape and the pleadings did not clearly show as they now do that recovery as to natural gas under the Palmer Corporation lease could not be had.

Proper decree should be presented.