OVERTON, Justice.
 

 This suit is brought to recover $2,086.83, severance taxes, as paid in error by plaintiffs, when the taxes should have been paid by defendant; the payment having been made under a contract for the production of oil and gas. The “lease,” as we shall term it, was granted by plaintiffs to Joseph B. Oheuvront, on March 16, 1918, and, thirteen days later, was assigned by Cheuvront to defendant. In January, 1923, defendant began the production of gas from the premises.
 

 The lease was granted for the purpose, to quote from it, “of prospecting for oil and gas and the production of the same therefrom [that is, the leasehold] together with the exclusive rights of ingress and egress, at any and all times, [and] to prospect, drill, mine and otherwise operate hereunder, [that is, under the lease] * *
 

 The royalty clause, which immediately follows, is:
 

 “The royalties above mentioned shall be (a) on oil, a quantity equal to one-eighth of ,all oil produced and saved, the same to be delivered at the wells or to the credit of the lessors in the pipe line to which the wells may be connected, (b) On natural gas, a quantity equal to one-eighth of all produced and used from each well producing gas and from which gas is used for any purpose on or off the premises, and which said one-eighth of all gas produced from each well producing gas and from which gas is used for any purpose on or off the premises, shall be paid for by this lessee to this lessor every three months at the rate of two cents per thousand feet, regardless of the price at which the gas may be marketed or sold, to be computed on the pressure, basis of five pounds according to Boyles law, for the measurement of gas at varying pressure, said payments to begin ninety days after commencing the use of gas * *
 

 Section 21 of article 10 of the Constitution of 1921, pertaining to the levy of severance taxes, reads:
 

 “Taxes may be levied on natural resources severed from the soil or water, to be paid proportionately by the owners thereof at the time of severance. Such natural resources may be classified for the purpose of taxation and such taxes predicated upon either the quantity or value! of the product at the time and place where it is severed. No severance tax shall be levied by any parish or other local subdivision of the State.”
 

 Act No. 140 of 1922, passed for the purpose of making effective the foregoing provision of the Constitution “by levying a tax upon all natural resources severed from the soil or water,” levies in the first and, second sections thereof such a tax, and the seventh section thereof reads:
 

 
 *485
 
 “Every person, firm, corporation or association of persons actually engaged in severing oil, gas, or other natural resources from the soil or water, or actually operating oil or gas property, or other property from which natural resources are severed, under contracts or agreements requiring payment direct to the owners of any royalty interest, excess royalty, or working interest, either in money or in kind, is hereby authorized, empowered and required to deduct from any amount due, or from anything due, the amount of the tax herein levied before making such payments.”
 

 The tax authorized by the Constitution and levied by the act of 1922, when all its provisions, touching the tax, are construed together, appears to be an excise tax, levied upon the severance of the gas itself from the soil, and not, as it is with property taxes, on the mere ownership or possession or the right to own or possess property. 61 C. J. 155; Patton v. Brady, 184 U. S. 608, 617, 22 S. Ct. 493, 46 L. Ed. 713, 718. This very tax, referring to the law by which levied, was said to be an excise tax in Gulf Refining Co. v. McFarland, 154 La. 251, 97 So. 433, 434, where the statement is made:
 

 “A severance tax, even though it is measured by the value of the property severed, is not a property tax; it is an excisd tax upon the privilege of severing; just as an inheritance tax, even though measured by the value of the property inherited, is not a property tax, but an excise tax on the right of inheriting.”
 

 Since the Constitution authorizes the levy of the tax on natural resources, severed from the soil or water, to be paid proportionately by the owners thereof at the time of severance, let us ascertain whether plaintiffs were the owners of any part of the gas at the moment of severance?
 

 It is now well established in this state that natural gas, beneath the soil, is the property of no person, and does not become the property of any one until reduced to possession. Frost-Johnson Lumber Co. v. Sailing’s Heirs, 150 La. 756, 855, 91 So. 207, 242. Therefore, when the gas was in its natural state beneath the soil, plaintiffs could not have owned any part of it. There was a time, however, in its production, when it was possible for plaintiffs to have become part owners in the gas actually produced as well as the defendant. It appears from the contract of lease, we think, that this time did arrive, for this contract provides that: “The royalties above mentioned shall be * * * on natural gas, a quantity equal to one-eighth of all produced and used for any purpose on or off the premises * * This provision makes) it clear that, at the moment the gas was reduced to possession, in the course of its extraction from the land, plaintiffs became the owners of a part of it, namely, of one-eighth, at the instant the lessee became the owner of the remainder.
 

 It is true that the foregoing provision of the contract is immediately followed by another provision, binding the lessee, in the same breath, to pay the lessors two cents a thousand feet for the one-eighth of all gas produced,' regardless of the price which the gas brought on the market. The effect of this provision was simply to make the lessee account to the lessors for the gas, going to plaintiffs, at a fixed price in money,
 
 *487
 
 instead of in kind. Before plaintiffs could call on defendants to account for the one-eighth gas in money, they had to become of necessity, at one time, the owners of that quantity of the gas. In the very language of section 7 of the Act of 1922, this provision calls for the payment of the royalty in money rather than in kind — a manner of payment, which it is obvious from the section does not throw the burden .of the entirq tax, on all gas produced, on the lessee, but makes the lessor pay • his part, namely, on the part which went to him or to his benefit.
 

 Our conclusion, therefore, is that plaintiffs are not entitled to recover the payments made by them. The payments were due, and hence were not made in error.
 

 We are supported in the views, here expressed, by the case of Brewer v. Forest Gravel Co., 172 La. 828, 135 So. 372, which we consider directly in point. The cases of Logan v. State Gravel Co., 158 La. 105, 103 So. 526; Board of Commissioners of Caddo Levee District v. Pure Oil Co., 167 La. 801, 120 So. 373; and Roberson v. Pioneer Gas Co., 173 La. 315, 137 So. 46, 82 A. L. R. 1264, cited by plaintiffs to show that they were never at any time the owners of any part of the gas produced, since their contract was one of lease, and the royalty paid them was rent or the consideration for the lease, are not pertinent here. The issues presented in those cases, as well as the facts, are different from those in the present casé. There was no question presented there, involving liability for a severance tax. While in them, especially in the latter two, the court treated royalty due as rent, it does not follow that when the question of who is liable for a severancé tax arises, the court will not examine particularly into the facts, involving liability for the tax, and rule that the owner of the royalty is liable for the tax thereon. Although the lessor, at the moment of the reducing of the oil or gas to possession, may be the owner of a part of it, nevertheless the delivery of such part by the lessee to the lessor as royalty may be treated, in proper cases, as the payment of rent.
 

 The trial court rendered judgment for plaintiff.. The judgment must be reversed.
 

 For these reasons, the judgment appealed from is set aside, and judgment is now rendered rejecting plaintiffs’ demands, at their costs in both courts.