ODOM, Justice.
 

 On November 15, 1935, the State of Louisiana, acting by and through the Governor, executed an oil, gas, and mineral lease, numbered 329, in favor of J. H. Reeves. The lease covered certain lands and water bottoms in the Parish of St. Mary. On March 13, 1936, Reeves, the lessee, transferred the lease to the Texas Company, the plaintiff in this suit. In the lease contract it is stipulated that, on the day the lease was signed, the lessee paid to the lessor the sum of $2,500 “for the right to begin the drilling of a well on the herein leased premises at any time within one (1) year from the date hereof”.
 

 Paragraph II of the lease contract reads as follows:
 

 “Should oil, gas and/or other minerals be produced in paying quantities on the premises hereunder, then the said lessee shall deliver to lessor as royalty, free of expenses:
 

 “One (1/8) eighth of all oil produced and saved, delivery of said oil to be understood as made when same has been- received by the first purchaser thereof. Or lessee may, . in lieu of said oil delivery, and at its option, pay lessor sums equal to the value thereof on the premises; provided, that the price paid lessor for said oil shall not be less than the average posted pipe-line price then current for oil of a like grade or quality.
 

 “One (1/8) eighth of all gas produced and utilized, delivery of said gas to be understood as made when same has been received by the first purchaser thereof or lessee may in lieu of said gas delivery, and at its option, pay to lessor sums equal to the value thereof at the well, provided that the price paid lessor forv said gas shall not be less than the average price then current of gas of like character or quality.
 

 “Two Dollars ($2.00) per long ton for all sulphur produced and saved.
 

 “Ten cents ($.10) per ton for all potash produced and saved;
 

 “One (1/8) eighth of any and all other minerals not specifically mentioned, said royalties to be delivered or paid as is the accepted custom in such matters.
 

 “Lessee also agrees to pay $50,000.00 out of 1/4 of 7/8 of first oil produced and saved.”
 

 The Texas Company developed the lease by drilling a number of wells on the property which produced oil, and the Stipulation of Facts shows that since August, 1937, the plaintiff “has been producing oil from the premises covered by said lease and the State has been paid and accepted the value of its 1/8 royalty oil in lieu of receiving its royalty in kind. The State has also been
 
 *758
 
 paid the sum of $50,000.00 being the proceeds of 1/4 of 7/8 of the first oil produced and saved.”
 

 In the Stipulation of Facts it is admitted “that the severance taxes were not paid by said The Texas Company on 1/4 of 7/8 of the oil produced from said lease, the proceeds of which were applied in payment of said $50,000.00 oil payment”, and that on or about December 9, 1938, the Collector of Revenue for the State of Louisiana made written demand upon the Texas Company for the payment of “additional severance taxes due on said 1/4 of 7/8 of said oil produced from lease No. 329”, amounting to $3929.96, and $963.78 for penalties.
 

 The Texas Company denied that it owed the severance taxes on 1/4 of 7/8 of the oil produced from the lease, but paid the amount plus the pehalties under protest, as provided in Act 330 of the Regular Session of 1938. It brought the present suit against the Collector of Revenue to recover the amounts thus paid. There was judgment rejecting plaintiff’s demands and. dismissing its suit at its costs. From this judgment plaintiff appealed.
 

 The first paragraph of Section 21, Article X of the Constitution, reads as follows:
 

 “Taxes may be levied on natural resources severed from the soil or water, to be paid proportionately by the owners thereof at the time of severance.”
 

 Act 24 of the Second Extra Session of 1935 is an act, according to its title, to carry into effect Section 21 of Article X of the Constitution of 1921 “by levying a tax upon all natural resources severed from the soil or water”.
 

 Section 1 of the act provides that, for the year 1935 and each subsequent year, “taxes as authorized by Section 21 of Article 10 of the Constitution of 1921, are hereby levied upon all natural resources severed from the soil or water”, and further provides that “Such taxes shall be paid by the owner or proportionately by the owners thereof at the time of the severance”.
 

 Under the Constitution and this act which carries it into effect, it is perfectly clear that, when a natural resource such as oil is extracted from land and thereby reduced to possession and ownership, the severance tax thereon is immediately due and must be paid by the owners thereof in proportion to their respective interests— i. e., each owner must pay the tax on his pro rata share of the product.
 

 The ground on which plaintiff rests its contention that it was not due' the State the severance tax on 1/4 of 7/8 of the oil, out of the proceeds of which fractional interest the State was paid the sum of $50,000, is clearly set forth in its petition. Speaking of the lease contract, plaintiff’s petition says in Paragraph III:
 

 “Among other things, said lease provides in Paragraph II thereof in part as follows:
 

 “ ‘Lessee also agrees to pay $50,000.00 out of 1/4 of 7/8 of first oil produced and saved.’ ”
 

 It is alleged that since August, 1937, “petitioner has been producing oil from the premises covered by said lease and has duly accounted for and paid to the State of Louisiana, as and when produced and saved, the full value of 1/4 of 7/8 of the first oil
 
 *760
 
 produced and saved from said leased premises, in accordance with the terms of said lease, such payments continuing through the month of October, 1938, and amounting in full to the total sum of $50,000.00”. Paragraph VI of plaintiff’s petition reads as follows:
 

 “Under the Constitution and laws of Louisiana, the State of Louisiana was at the time of severance thereof the owner of that certain 1/4 of 7/8 of the first oil produced and saved from said leased premises allocable to the payment of the said $50,000.00 oil payment due the State of Louisiana under the terms of said lease; and your petitioner was at no time the owner thereof, nor the owner of any interest therein which would render it legally liable for the payment of severance taxes thereon.”
 

 Counsel say in their brief:
 

 “Plaintiff’s proposition is that under the provisions of the lease in question the State is the owner of 1/4 of 7/8 of the first oil produced and saved up to the value of $50,000.00; and that the State does not owe itself a severance tax on its own interest in the oil.
 

 “Until oil was produced by the lessee from the leased land, there was no obligation. After oil was discovered and produced by lessee, an obligation came into being — to do what? To deliver to lessor 1/4 of 7/8 of the oil produced and saved, if, as, and when saved until the value of that interest amounted to $50,000.00.”
 

 The ground on which the Collector of Revenue bases his demand for the severance tax claimed is clearly set forth in Paragraph VI of his answer, in which it is denied “that the State of Louisiana was at the time of severance thereof the owner of that certain 1/4 of 7/8 of the first oil produced and saved from said leased premises under the terms of said lease”. It is alleged :
 

 “That the State of Louisiana at no time became the owner of the oil or any part thereof over and above its 1/8 royalty and that the Severance Tax on the said 1/4 of 7/8 of first oil produced became due by The-Texas Company, lessee, immediately upon the severance thereof by The Texas Company, lessee, since at that moment title and ownership vested in Texas- Company, the lessee and petitioner herein”.
 

 ' The Texas Company, the producer of the oil, did not owe the severance tax on that share or portion of the oil which the contract itself allotted to the State as royalty.. It owed the tax only upon that fractional, part of the oil which belonged to it at the moment the oil was brought to the surface of the ground.
 

 The question, therefore, is whether the Texas Company owned, at the time of-severance, the 1/4 of 7/8 of the oil out of the proceeds of which the $50,000 was paid. If it did, it must pay the severance tax demanded by the State. We think the Texas. Company did own the oil.
 

 The royalty clauses in the lease contract here involved relating to the fugitive minerals,1 oil and gas, are like those found in the oil and gas leases which were considered by this court in the cases of Wright et al. v. Imperial Oil & Gas Products Co.,
 
 *762
 
 177 La. 482, 148 So. 685; Wall et al. v. United Gas Public Service Co., 178 La. 908, 152 So. 561; Crichton et al. v. Standard Oil Co., 178 La. 57, 150 So. 668; Sartor et al. v. United Carbon Co., 183 La. 287, 163 So. 103; and Sartor et al. v. United Gas Public Service Co., 186 La. 555, 173 So. 103.
 

 In the Wright case, the landowner granted an ordinary oil and gas lease covering her property, the gas royalty reserved by the landowner being “a quantity equal to one-eighth of all produced and used from each well producing gas”.
 

 The question involved was whether the landowner, who was plaintiff in the case, should pay any portion of the severance tax due the State. The plaintiff’s contention was that the entire amount of the severance tax should be paid by the producer. This contention was upheld by the trial court, and the lessee, the producer of the gas, appealed to this court. The judgment was reversed.
 

 . In the course of the opinion, this court said:
 

 “Since the Constitution authorizes the levy of the tax on natural resources, severed from the soil or water,
 
 to be paid proportionately by the oiwiers thereof at the time of severance,
 
 let us ascertain whether plaintiffs were the owners of any part of the gas at the moment of severance ? ” (Italics ours.)
 

 As to-who owned the gas at the time of severance, we said, after quoting the royalty clause:
 

 “This provision makes it clear that, at the moment the gas was reduced to possession, in the course of its extraction from the land, plaintiffs became the owners of a part of it, namely, of one-eighth, at the instant the lessee became the owner of the remainder.”
 

 We held that, since the lessor owned 1/8 of the gas at the time of severance, 1/8 of the severance tax was due by her.
 

 In the Wall case [178 La. 908, 152 So. 563], a similar gas royalty clause was found in the lease, and, as to the ownership of the gas at the time of severance, we said:
 

 “Previous to the moment the gas reached the surface of the ground, the parties owned nothing so far as the gas was concerned, except the right to explore for it and reduce it to possession and ownership. But when the gas reached the surface of the ground, the parties owned it in the proportion of one-eighth to the lessor and seven-eighths to the lessee.”
 

 In the Sartor cases, similar gas royalty clauses were involved, and it was held that the lessor owned 1/8 of the gas at the time of severance and that the lessee owned 7/8. In each of those cases the main question involved was whether the lessor should pay any portion of the severance tax, and, following the Wright case, this court held that, since the lessor and the lessee owned the gas at the time of severance in the proportion of 1/8 to the lessor and 7/8 to the lessee, 1/8 of the severance tax was due by the lessor and 7/8 by the lessee.
 

 The settled jurisprudence, therefore, is that, under an oil and gas lease contract in which the lessor reserves a stipulated fractional royalty interest, the parties own the oil or gas jointly at the time of severance, the lessor owning the fractional inter
 
 *764
 
 est reserved as royalty and the lessee owning the remainder, and that the severance tax must be paid by the parties in proportion to the respective interests owned by each.
 

 Counsel for the Texas Company concede this, but they say that the clause in the lease contract reading “Lessee also agrees to pay $50,000.00 out of 1/4 of 7/8 of first oil produced and saved” should be construed to mean that the State owned the 1/4 of the 7/8 of the oil, out of the proceeds of which the $50,000 was paid to the State. They say in their brief that the lessee’s obligation was “To deliver to lessor 1/4 of 7/8 of the oil produced añd saved, if, as, and when saved-until the value of that interest amounted to . $50,000.00”.
 

 But the clause referred to does not say that. It says that “Lessee also agrees to pay $50,000.00 out of 1/4 of 7/8 of first oil produced and saved”. That clause must be construed to mean what it says. It says that the lessee agrees to pay to the State $50,000 out of 1/4 of 7/8 of the first oil produced, which means that the $50,000 is to be paid by the lessee out of the proceeds of 1/4 of its 7/8 of the oil. Clearly the State, as lessor, did not reserve an additional interest in the oil over and above the royalty interest of 1/8 and therefore owned at the time of severance only 1/8 of the oil, 7/8 being owned by the lessee. If the State had intended to reserve an additional interest in the oil, the contract would have so provided. But it did not.
 

 What this particular clause of the contract means is that the lessee agreed to pay to the State a bonus of $50,000 in order to secure the lease, and that the payment of this bonus was deferred and was to be paid out of its 7/8 interest in the oil. This is common practice where competition among lessees is keen. We quote the following from Summers on Oil and Gas, Permanent Edition, Volume 3, ■§ 586, Chapter 20, page 392:
 

 “As the competition among lessees for leases upon desirable or proven oil and gas lands became keener, in order to secure desirable leases, they instituted the practice of bidding against each other by offering the lessor a cash bonus for the lease, rather than by agreeing to deliver to him, a larger proportion of the oil or gas actually produced, or to pay him the value of such larger proportion. Where the competition is great, lessees often agree to pay to lessors many thousands of dollars by way of a bonus in order to secure a desirable lease. Such bonus may be paid in cash, or the payment of a portion of the sum may be deferred. Where the payment of a portion of the bonus is deferred, it is common practice for the parties to agree that the deferred portion shall be' paid out of the lessee’s portion of the first oil and gas produced.”
 

 In the case at bar, the lessee agreed to pay the State, the lessor, a bonus of $50,000. But the payment of that bonus was deferred and was made contingent upon the production of oil, the agreement being that the bonus should be paid out of the lessee’s portion of the first oil produced.
 

 The words “bonus”, “rental”, and “royalty” used in connection with oil and gas leases are to be construed in the ordinary and popular sense, “bonus” meaning the cash consideration paid or agreed to be paid for the execution of the lease, “rental” being
 
 *766
 
 the consideration for the privilege of delaying drilling operations, and “royalty” being a share of the product or proceeds therefrom reserved to the owner for permitting another to use the property. See Words and Phrases, Permanent Edition, under heading “Bonus”, subheading “Oil and gas leases”, Volume 5, page 672; and under heading “Royalty”, subheading “Oil, gas and minerals”, Volume 37, page 811, where numerous cases are cited.
 

 In Wright v. Brush, 10 Cir., 115 F.2d 265, it was said that a “bonus”, as applied to an existing oil and gás lease, is a consideration in addition to, or in excess of, that which would ordinarily be given for a lease, and, where one seeking a lease from an owner agrees to pay, in addition to the usual royalty reserved in the lease, something more, such additional payment is a “bonus”, and it is immaterial whether the additional consideration is paid in money or out of oil, so long as it does not come out of the usual and ordinary royalty reservation to the landowner. See also Geller v. Smith, 130 Cal.App. 485, 20 P.2d 102; Elsinore Oil Co. v. Signal Oil & Gas Co., 3 Cal.App.2d 570, 40 P.2d 523; Davis v. Hurst, 150 Kan. 130, 90 P.2d 1100, 122 A.L.R. 957; Carroll v. Bowen, 180 Okl. 215, 68 P.2d 773.
 

 'Counsel for the Texas Company cite several cases from other jurisdictions, which, they argue, support their contention. No useful purpose would be subserved in reviewing the rulings in the cases cited for the reason that the lease contracts involved are not identical with the one involved in, the case at bar, and for the further reason that the laws of other states relating to the payment of severance taxes are not like ours. Our own law and jurisprudence must be observed and followed in order to determine correctly the issues here involved.
 

 Counsel for plaintiff also cite several cases decided by the Supreme Court of the United States. But those cases are not in point. We have read each one of them carefully and find that they relate to the question whether the amount paid by a lessee to a landowner, whether as royalties or bonuses, should be placed in the category of capital gains. It was held that, whether such payments were made as bonuses or royalties, the payments should be considered as consideration for the lease and properly classed as income received by the lessor and should be accounted for as such in his return to the Collector of Revenue to serve as a basis for fixing the amount of his income tax.
 

 For the reasons assigned, the judgment appealed from is affirmed.