The **LOUISIANA LAND AND EXPLO-
RATION COMPANY**, Appellant,

v.

Charles A. **DONNELLY**, Formerly Collec-
tor of Internal Revenue, et al.,
Appellees.

No. 24693.

United States Court of Appeals
Fifth Circuit.

May 1, 1968.

Marvin K. Collie, Houston, Tex., L. K. Benson, David J. Conroy, New Orleans, La., for appellant.

Louis C. LaCour, U. S. Atty., New Orleans, La., Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Harry Marselli, Grant W. Wiprud, Thomas L. Stapleton, Attys., Dept. of Justice, Washington, D. C., Joan Elaine Chauvin, Asst. U. S. Atty., of counsel, for appellees.

A. Chauncey Newlin, White & Case, New York City, amicus curiae, W. Bruce Thomas, Edmund W. Pavenstedt, New York City, of counsel.

Before MARIS,* THORNBERRY and AINSWORTH, Circuit Judges.

* Of the Third Circuit, sitting by designation.

1. Paragraph "Eleventh (e)" thereof reads as follows:
"Texas will pay to the Land Company, in respect of each dome, an additional 8⅓% of the net profits realized at the mouth of the well from the total pro-

AINSWORTH, Circuit Judge:

Louisiana Land and Exploration Company (LL&E), taxpayer, has appealed from an adverse judgment of the district court in its suit for refund of federal income and excess profits taxes paid for the calendar years 1950 through 1953. The sole issue is whether taxpayer, as owner of a mineral interest in oil and gas (8⅓% of total production less certain agreed production expenses), is entitled to an additional depletion allowance on income received increased by the amount of severance taxes attributable to such interest.

The facts were stipulated by the parties substantially as follows: Taxpayer, as owner, granted mineral leases and subleases of certain realty in the State of Louisiana to the Texas Company by written instrument dated November 12, 1928. Pursuant to the rights granted by this instrument, oil and gas were discovered, developed and produced by lessee. Under the provisions of the instrument, particularly paragraph "Eleventh,"[1] the Texas Company paid to taxpayer "a *royalty* of 25% of production as well as a *royalty* based on 8⅓% of the net profits from each dome covered by the contract." (See Stipulation, para. 12.) (Italics by the Court.) On its income tax returns for the years 1950, 1951, 1952, and 1953, taxpayer reported these receipts from the Texas Company as a part of its gross, depletable income.

The Stipulation further provided that during the years in question, severance taxes arising out of the production of the realty involved were payable to the State of Louisiana pursuant to the state statutes. Paragraph "Nineteenth" of the instrument of November 12, 1928 provides that the Texas Company shall pay

duction of oil and gas from such dome (each separate dome being treated as a unit), after Texas has fully reimbursed itself for all expenses theretofore incurred in developing such dome; this profit to be based upon prices of oil and gas determined as provided in subdivisions (a) and (b) of this Section."

all severance taxes due and owing on its 75% of production and that taxpayer shall pay all severance taxes due and owing on its 25% of production. Also, by agreement of the parties and provisions of paragraph "Nineteenth," the Texas Company paid to the State of Louisiana all of the severance taxes due on 100% of production; and when making payment to taxpayer of its royalty of 25% of production, the Texas Company withheld the severance taxes attributable to 25% of production which it had paid on behalf of taxpayer. On its income tax returns filed for the years 1950 through 1953, inclusive, taxpayer included in its gross income the amounts received from the Texas Company in payment of its royalty of 25% of production, plus the amount of severance taxes due thereon which had been withheld by the Texas Company. Taxpayer properly computed its depletion allowance on this total amount, and also claimed a deduction for the severance taxes. On taxpayer's income tax returns for the years 1950 through 1952, taxpayer also included in its gross income the amounts received from the Texas Company "in payment of its *royalty* based on 8⅓% of the net profits" from each dome covered by the contract. (Stipulation, para. 14.) (Italics by the Court.) Taxpayer claimed a depletion allowance on the amount so received. However, on its income tax return for the year 1953, taxpayer treated the amounts received "in payment of its *royalty* based on 8⅓% of the net profits" differently than it had treated these amounts on the 1950 through 1952 returns in that in addition to claiming a depletion allowance on the amount actually received from the Texas Company, taxpayer added to the amount so received a sum representing severance taxes it claimed to be attributable to this interest and computed its depletion on the total. Taxpayer also claimed a deduction for the severance taxes claimed to be attributable "to its *royalty* based on 8⅓% of the net profits." (Stipulation, para. 15.) (Italics by the Court.)

According to the Stipulation (para. 17), the books and records of the Texas Company, payments to taxpayer and to the State of Louisiana for severance taxes pursuant to the contract of November 12, 1928 were handled as follows:

The Texas Company reported 100% of the gross production and paid to the State of Louisiana the severance taxes due thereon. It then deducted from the gross production the royalty of 25% of production due to the taxpayer under the provisions of the contract. In making this payment to the taxpayer, however, the Texas Company withheld 25% of the total severance taxes which it paid to the State of Louisiana.

In computing the royalty payment based on the net profits from each dome for purposes of paragraph "Eleventh (e)" of the contract, the Texas Company deducted from the gross income of each dome 100% of the severance taxes due thereon; from the result, multiplied by 75% depreciation, overhead, and direct expenses were subtracted. After making these deductions, which gave the net income of each dome, 8⅓% of this net figure was paid to the taxpayer under the provisions of the contract.

In computing its depletion allowance, the Texas Company deducted the royalty of 25% of production paid to the taxpayer and the royalty of 8⅓% of the net profits paid to the taxpayer to arrive at its gross income from each dome.

The parties stipulated (para. 16) that the issue presented in this case arises from taxpayer's contention that its depletion allowance with respect to the amounts received in payment of "its *royalty* based on 8⅓% of the net profits" should be computed on the basis of the amounts actually received from the Texas Company increased by the amounts of severance taxes it claims is attributable thereto; further, that it should be allowed a deduction for the severance taxes it claims are attributable "to its royalty interest of 8⅓% of the net profits." On the other hand, the Collector contends that taxpayer's deple-

tion allowance received "in payment of its *royalty* based on a percentage of net profits" should be computed on the basis of the amounts physically received from the Texas Company and that no severance taxes are attributable thereto and should therefore not be allowed for the purpose of computing depletion; and that no additional deduction should be allowed for severance taxes since none are attributable to this interest. (Italics by the Court.)

The findings of fact of the district judge, pursuant to the Stipulation, are substantially identical to those above set forth. The trial court concluded, as a matter of law, that taxpayer was not entitled to the additional depletion allowance claimed on severance taxes said to be attributable to the 8⅓% interest. We disagree and reverse.

■ At the outset it is pertinent to observe that the Collector's interest in this case is in protecting the Government's revenues. As between lessor and lessee, depletion is allowed only on 100% of production (and must be apportioned between lessor and lessee). It may not be claimed by both lessor and lessee on the same mineral income. See Helvering v. Twin Bell Oil Syndicate, 293 U.S. 312, 55 S.Ct. 174, 79 L.Ed. 383 (1934).

As the Collector points out in his brief, there is no dispute as to taxpayer's entitlement to depletion on the full amount of the 25% gross royalty, that is, the amount paid directly to it plus the amount paid over to the State for severance taxes. Nor is there any dispute as to taxpayer's right to additional depletion on the full amount of the actual income received from its 8⅓% net profits interest. The issue is whether there should be added the amount of severance taxes taxpayer claims are attributable to the 8⅓% interest to compute the depletion allowance.

Initially we must determine the nature of the 8⅓% interest owned by taxpayer. Taxpayer terms it a royalty, sometimes

as a net profits royalty. The Collector disagrees and refers to it as an interest or an amount but not a royalty.

Nevertheless, the parties to the contract considered the interest a royalty for they provided in paragraph "Eleventh" of the instrument of November 12, 1928, that the Texas Company would pay to LL&E "the following *royalties*": "(e) * * * an additional 8⅓% of the net profits *realized at the mouth of the well* from the total production of oil and gas from such dome * * * after Texas has fully reimbursed itself for all expenses theretofore incurred in developing such dome; * * *." (Italics by the Court.) This royalty was part of taxpayer's remuneration for the use of its lands in the production of oil and gas.

The letter agreement between Texas Company and LL&E dated February 1, 1947, referred to "the *royalties* based on net profits payable to Lessor under the provisions of paragraph (e) of Section Eleventh of said aforesaid lease." (Italics by the Court.) The identical reference to "royalties" is made in several subsequent amendments to the contract.[2]

The stipulation of fact on which this case was tried, and which was freely entered into by the parties, frequently and consistently refers to the 8⅓% interest as a royalty. Thus the 8⅓% interest is referred to in paragraphs 14, 15 and 16 of the stipulation as "royalty based on 8⅓% of the net profits."

■ Louisiana is a non-ownership state in the mineral law field. As such, oil and gas in Louisiana are fugacious and therefore not subject to absolute ownership in place. The property interest is the right to reduce the minerals to possession. See Daggett on Louisiana Mineral Rights (1949 ed.), (p. 1). The royalty concept is referred to by Daggett (p. 247), as follows:

"The word royalty originated in England where it was used to designate

---

2. See the contracts between Texas Company and LL&E dated March 13, 1948, March 5, 1951, November 28, 1951, and letter agreement of January 12, 1955.

the share in production reserved by the crown from those to whom the right to work mines and quarries was granted. Such is its proper use today in mineral contracts. It is the price paid for the privilege of exercising the right to explore. If that right is granted by a lease contract, it is the whole or part of the consideration for the lease. If that right is granted or reserved by a sale, it is the consideration in part or whole of the sale. Royalty in itself cannot be used to designate the fundamental right which is being dealt with but only to indicate the percentage, the price, the rent, the consideration attached to or proceeding out of the right or that may proceed from it during its existence."

This concept is based on decisions of the Louisiana courts. For example, in the leading case of Sartor v. United Gas Public Service Co., 186 La. 555, 173 So. 103 (1937), the Louisiana Supreme Court said:

"As relates to mining, 'royalty' or 'royalty interest' is 'a share of the product or profit reserved by the owner for permitting another to use the property.' Webster's New International Dictionary.

"In a casenote found in 101 A.L.R. page 885, it is said that the word 'royalty' means 'the share of the produce or profits paid the owner of the property'; that in cases where oil and gas leases are actually involved it is 'universal to refer to the lessor's portion of the oil, or the proceeds thereof, as "royalty." '

"In this case plaintiffs' 'royalty interest' in oil, if discovered, was to be one-eighth of it in kind, and in gas one-eighth of its proceeds. Instead of plaintiffs' royalty interest in the gas being paid in gas, it is payable in money, and the Legislature has said that where there is an 'amount,' that is, the amount of money due the land-owner under the contract, the 'amount of tax levied' must be deducted before any payment is made to the lessor.

"Plaintiffs' remuneration for the use of their lands for the production of gas is a share of its proceeds. That was their royalty or royalty interest, which royalty or royalty interest, according to legislative interpretation, is property. We think that interpretation is reasonable under the general principles governing mining contracts." (173 So. at 109.)

In Greene v. Carter Oil Company, La. App., 2 Cir., 152 So.2d 611, 616 (1963), a Louisiana Court of Appeals held:

"Royalty is defined in 58 C.J.S. Mines and Minerals § 213, p. 537, to be: ' * * * a share of the product or profit reserved by the owner for permitting another to use the property * * * the compensation provided for the privilege of drilling for oil and gas, consisting of a share in the oil and gas produced under existing leases * * *.' See also Vincent, et al. v. Bullock, et al., 192 La. 1, 187 So. 35, 39 (1939).

"The meaning and implications of the term 'royalty' are affected and to a large extent controlled by its use in the contract between the parties. Such contracts as oil and gas leases have the effect of law upon those who form them, and none except the parties can abrogate or modify them."

Williams and Meyers, Manual of Oil and Gas Terms (2d ed.1964), (p. 243), defines "net profits interest" as "a share of gross production from a property, measured by net profits from operation of the property"; "net royalty" is defined as "a term sometimes used to describe a net profits interest." Breeding and Burton, Taxation of Oil and Gas Income, § 5.01, states that net profits interests are considered types of royalties. See also 3 Kuntz, Law of Oil and Gas, § 39.1.[3]

3. Twentieth Century-Fox Film Corporation v. Teas, 5 Cir., 1961, 286 F.2d 373, is therefore distinguishable. The Court stated that a variable participating royalty based on one half the net profits after deduction of all expenses was not royalty

■ We have little doubt, therefore, that the 8⅓% net profits interest, which is part of the price, rent or consideration which the Texas Company as lessee pays to LL&E as lessor of the realty involved in this case, is a royalty interest, and we so hold.

■ As such, the 8⅓% royalty is subject to the Louisiana severance tax in the amount attributable to it, and the liability for the severance tax is, therefore, that of the taxpayer, LL&E. In 1933, in Wright v. Imperial Oil & Gas Products Co., 177 La. 482, 148 So. 685, the Louisiana Supreme Court ruled that the owner of a royalty interest became liable for his share of the Louisiana severance tax at the time the mineral was reduced to possession,[4] which was the time when the royalty holder became the owner of a part of the production.

In Sartor v. United Gas Public Service Co., 186 La. 555, 173 So. 103 (1937), the Louisiana Supreme Court, referring to the liability of landowners for the payment of the severance tax, said:

"* * * yet they [the Legislature] wrote into the act a section which clearly imposes upon the landowners who grant to others the exclusive right to explore their land for oil and gas the duty of paying a proportionate part of the severance tax under royalty clauses like the one found in this contract." (173 So. at 109.)

The Court further held:

"In either event the one actually engaged in severing the resource from the soil or water is 'required' to deduct 'from the amount due,' that is, the amount due the landowner if the royalty interest is to be paid in money, or 'from the thing due' the landowner if the royalty interest is to be paid in kind, 'the amount of the tax herein levied before making such payments'; that is, before making payments to the landowners." (173 So. at 109.)

The severance tax in Louisiana is authorized under Louisiana Const. Art. X, § 21, which states in pertinent part that "taxes may be levied on natural resources severed from the soil or water, to be paid proportionately by the owners thereof at the time of severance." Louisiana Revised Statutes of 1950, 47:- 631, levies a severance tax on all natural resources severed from the soil or water, as authorized by the Louisiana constitutional provision referred to. Section 632 provides "these taxes shall be paid by the owner or proportionately by the owners thereof at the time of the severance * * *." Section 636 requires the severers of oil and gas from the soil or water to withhold from royalty payments from any amounts due the amount of the severance tax.[5]

■ The Collector's argument that the Texas Company is the owner of 75% of the production and, therefore, liable for 75% of the severance tax is not convincing. It is true that the instrument of November 12, 1928 (paragraph "Nineteenth" thereof) states that the Texas Company will pay severance taxes "on its 75% of the production of oil and gas." From this the Collector argues that taxpayer has no liability to the State of Louisiana for severance taxes attributable to its 8⅓% net profits

"as generally understood and defined." This is not to say there are not other kinds of royalty, such as the net profits interests here, as the numerous authorities we have cited in the text of our opinion abundantly demonstrate.

4. The provisions of paragraph "Eleventh (e)" of the instrument of November 12, 1928 between the Texas Company and LL&E are recalled, especially that portion thereof which refers to the obligation of Texas Company to pay royalties to LL&E of "8⅓% of the net profits realized at *the mouth of the well* from the total production" (i. e., at the time of reduction to possession), after Texas Company has reimbursed itself for all expenses "theretofore incurred in developing such dome." (Italics by the Court.)

5. This Court held in Roberts v. United Carbon Co., 5 Cir., 1935, 78 F.2d 39, 41 (relying on the Louisiana Supreme Court's holdings, some of which we have cited in our opinion), that the lessor owes his part of the severance tax.

royalty interest. It is clear the Texas Company is not the owner of the full 75% of the production because it has an obligation to pay an additional royalty to LL&E of 8⅓% of the net profits from each dome. Since, in Louisiana, taxpayer becomes the owner at the time of severance, or reduction to possession, of its share of the total production, it thereby becomes liable at that time to the payment of the severance taxes attributable to this interest. The Texas Company having the Louisiana statutory obligation as severer to withhold the entire severance tax due on the total production, its payment of the total severance tax is a payment in part of that proportion of the severance tax due on the 8⅓% net profits royalty interest.

▉ The payment by the Texas Company of the Louisiana severance tax attributable to the 8⅓% net profits royalty is the payment of additional royalty to taxpayer. When the Texas Company paid severance taxes for which the royalty owner was responsible, its payment thereof constituted additional royalty to lessor, LL&E. Taxpayer relies on Burt v. United States, Ct.Cl., 1959, 170 F.Supp. 953, in which the court answered the question of whether the payment of ad valorem taxes by the lessee, rather than a larger royalty or rental payment, had the effect of making that payment a part of lessor's rental or royalty production income by holding that since these taxes were obligations of the lessor, the payment by lessee constituted additional royalty and that lessor was entitled to statutory depletion allowance computed

on the total of the royalty paid plus the amount of the taxes. The court said (p. 957):

"Of course, taxes as such are not a part of royalty production for either the lessor or the lessee. In this particular case we are not holding that as taxes they are the subject of depletion but as part payment to the lessee of his part of the depletion allowance, it being a part of the yardstick to measure lessor's share of the income from the production of iron ore in connection with the grant or privilege to the lessee to conduct the mining operations on the property."

See also Handelman v. United States, Ct. Cl., 1966, 357 F.2d 694; United States Steel Corporation v. United States, S.D. N.Y., 1967, 270 F.Supp. 253. These cases differ in principle from the authorities cited by the Collector, such as Commissioner of Internal Revenue v. Felix Oil Co., 9 Cir., 1944, 144 F.2d 276, where it was held that taxpayer, a net profits interest lessor, was not entitled to construct a theoretical gross income by recourse to the expenses of production operations in order to compute a basis for depletion. The difference between *Felix Oil Co.* and the *Burt* line of cases is that there was no question of *taxes* due by lessor involved in *Felix Oil Co.* and it would have been improper to consider as gross income (for depletion computation purposes) production expenses *other than taxes* paid by lessee in the mining of the property, which expenditures were solely those of lessee *for which lessor had no liability.*[6]

6. Texas Co. v. Fontenot, 200 La. 753, 8 So. 2d 689 (1942), cited by the Collector, is not apposite. In that case Texas Co. sought to avoid payment of Louisiana severance taxes on its obligation in connection with a State mineral lease to pay the State of Louisiana, in addition to a ⅛ royalty, "50,000.00 out of ¼ of ⅞ of first oil produced and saved." The Louisiana Supreme Court held that "the lessee [Texas Company] agreed to pay the State [of Louisiana], the lessor, a bonus of $50,-000." This payment was therefore held to be a cash consideration (in addition to royalty) for the execution of the lease by the State of Louisiana to the Texas Company, and differed in that respect from royalty, which is "a share of the product or proceeds therefrom reserved to the owner for permitting another to use the property." (8 So.2d at 693.) The Louisiana Supreme Court reaffirmed the settled principle that "the parties own the oil or gas jointly at the time of severance, the lessor owning the fractional interest reserved as royalty and the lessee owning the remainder, and that the severance tax must be paid by the parties in proportion to the respective interests owned by each." (8 So.2d at 692.)

■ Section 114(b) (3) of the Internal Revenue Code of 1939 (26 U.S.C. [I.R.C.1939] § 114(b) (3)) allows depletion in the case of oil and gas wells of 27½% of the gross income from the property during the taxable years, "excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property." Thus the Texas Company is obliged to exclude from its gross income in this case, for purposes of computation of the 27½% depletion allowance, all rents or royalties paid which include in this instance the 8⅓% net profits royalty which is part of the rent which Texas Company pays to LL&E for the use of its property in the production of oil and gas.

There is nothing unusual about adding severance taxes back to a royalty holder's interest and considering the payment of taxes by the lessee as additional royalty so that the gross amount then becomes the basis of computation of the royalty holder's depletion allowance. The Collector relies on Breeding and Burton, Income Taxation of Oil and Gas Production (1961 ed.), § 8.13, p. 817, cited in his brief; but taxpayer points out that the quotation actually explains and supports its own position rather than the Collector's. The quotation from Breeding and Burton reads as follows:

"If an oil and gas property is owned by more than one person, as is the usual case, the purchasing company ordinarily pays each of the owners of an interest in the property for his share of the oil and gas purchased, on the basis of division orders filed by the owners with the purchaser. If the taxpayer's interest in the property is a net profits interest, or in some instances an oil payment, it is not possible for the purchaser to make payment directly to the owner of the interest. In such cases payment will be made to the owner of the interest burdened with the net profits interest or the oil payment, and it will be necessary for the owner of that interest to account for such production to the owner of the net profits interest or oil payment. In making payments, the purchasing company deducts from the amounts due the owners the applicable production and severance taxes levied by the state in which the property is located. *Since a net amount after deduction of such taxes is remitted to the respective owners, they should account for such taxes by adding them back to the amounts received in order to determine correctly gross income from the property for purposes of computing percentage depletion. Such taxes would then be claimed as a deduction from gross income."* (Emphasis added by the Court.)

■ It is clear, therefore, that taxpayer should add back to the amount actually received from Texas Company on the 8⅓% royalty interest the amount of severance taxes attributable thereto to determine correctly gross income for computation of the depletion allowance. Then, of course, the taxes are properly deducted from gross income.

We hold, therefore, that taxpayer's 8⅓% net profits interest is a royalty interest. As such, it is subject to the Louisiana severance tax attributable to it for the amounts actually received and the liability therefor is that of LL&E. Payment by Texas Company of the severance tax attributable to this royalty interest is payment of additional royalty to taxpayer and the amount actually received by taxpayer from Texas Company under the 8⅓% net profits royalty should be increased by the amount of Louisiana severance taxes attributable to that interest for purpose of computing taxpayer's depletion allowance computed on the total amount.

Reversed.