577 So.2d 802 (1991)
SUCCESSION OF Charlie DOLL, Plaintiff,
v.
Paddy Ann DOLL, Defendant.
Ludeweka Doll SULLIVAN, Plaintiff,
v.
Paddy Ann DOLL, Defendant.
Nos. 22162-CA, 22163-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1991.
Richie & Richie by Byron A. Richie, Shreveport, for Ludeweka Doll Sullivan.
Montgomery, Barnett, Brown Read, Hammond & Mintz by Nathan T. Gisclair, Jr., New Orleans, for Paddy Ann Doll.
Before MARVIN, NORRIS and HIGHTOWER, JJ.
HIGHTOWER, Judge.
A donee appeals a judgment ordering collation of revenues realized from immovable property previously returned to the succession. We modify and affirm.

FACTS
In these consolidated cases, the only remaining issue arises from the decedent's conveyance of a certain tract to one of his three children, Paddy Ann Doll, appellant. By recorded act dated March 23, 1978, Ms. Doll acquired from her father 468 acres of land near Blanchard, Louisiana ("the *803 Blanchard property") for the stated price of $60,000. The parcel contained approximately 346 acres of naturally seeded forest and 122 acres of open pasturage.
Charlie Doll died on August 4, 1978. Ms. Doll remained in possession of the tract until December 19, 1985. During that period, the following revenues accrued:

(1) Rent from houses $13,740.00
(2) Sale of timber 73,269.85
(3) Subsidy for planting trees 2,404.00
(4) Mineral lease 70,795.46
 __________
 TOTAL: $160,209.31

Of that sum, appellant received various amounts during different time periods, as follows:

(a) from date of transfer to
 date of decedent's death: $ 188.33
(b) between date of death and
 date of judicial demand for
 collation: 152,210.98
(c) between date of judicial
 demand and collation in kind: 7,810.00
 ___________
 TOTAL: $160,209.31

On December 10, 1982, Ludeweka Doll Sullivan instituted an action seeking return of the Blanchard property to her father's succession, along with the revenues produced. After acceding to that demand to the extent of reconveying the entire tract to the succession on the date indicated in the preceding paragraph, appellant requested return of the purchase price and preservation expenses. Subsequently, in accordance with a compromise agreement reached by the two sisters, an interlocutory consent judgment of May 24, 1988, recognized appellant's right to reimbursement of $120,000 from the succession.
The existing issue, as posed by this appeal, concerns the monies derived by Paddy Doll during her possession of the property. As stated, the trial judge ordered collation of the entire sum of revenues.

DISCUSSION

Collation of Fruits
The law contemplates, and presumes that an ascendant intends, perfect equality among heirs; actual collation rules, from inception, have existed to maintain and effectuate this equality. LSA-C.C. Art. 1229; Succession of Fakier, 541 So.2d 1372 (La.1988); Succession of Causey v. Causey, 569 So.2d 665 (La.App.2d Cir.1990); Succession of Pierson, 339 So.2d 1337 (La.App.3d Cir.1976), writs denied, 342 So.2d 216, 217 (La.1977). Indeed, there is a presumption favoring the requirement of collation in every instance "where it has not been expressly forbidden." LSA-C.C. Art. 1230. In keeping with those concepts, fruits of an immovable collated in kind are subject to collation from date of the donor's death.[1] See Ellis v. Benedict, 408 So.2d 987 (La.App.2d Cir. 1981). Such a conclusion is consistent with the principle that heirs acquire ownership from the moment of the decedent's death. See LSA-C.C. Art. 934; Dion v. Knap, 230 So.2d 842 (La.App. 1st Cir. 1970).
To support her alternative argument that fruits are subject to return to the succession only from date of judicial demand, appellant relies upon LSA-C.C. Arts. 1559 and 1569. As can readily be seen, however, the first article, in setting forth four exclusive causes for revocation or dissolution of donations inter vivos, does not mention collation. To narrow the point: legal or conventional return, enumerated in the fourth subpart of LSA-C.C. Art. 1559, does not encompass collation.Not only is collation defined as the real or supposed return, LSA-C.C. Art. 1227, but also the terms of LSA-C.C. Art. 1559(4) apparently refer to LSA-C.C. Art. 897 (the legal return) and LSA-C.C. Art. 1534 (the conventional return). See also Rouanet v. Hunt, 17 La. 407 (1841); Liquidators of Prudential Savings & Homestead Society v. Langermann, 156 La. 76, 100 So. 55 (1923). Thus, collation not being included within the parameters of LSA-C.C. Art. 1559, LSA-C.C. Art. 1569 does not apply.
Nor are the cases cited by appellant persuasive. Osterland v. Gates, 400 So.2d 653 (La.1981) does not deal with fruits, but with legal interest on the judgment per LSA-C.C.P. Art. 1921. See the court of appeal opinion, Osterland v. Gates, 391 So.2d 855 (La.App.3d Cir.1981). As for *804 Clark v. Hedden, 109 La. 147, 33 So. 116 (1902), that decision (also mentioned in Osterland) is based upon analogy to reduction of donations, as governed by LSA-C.C. Art. 1515. Reduction and collation are entirely distinct matters, controlled by separate codal rules. Jordan v. Filmore, 167 La. 725, 120 So. 275 (1929); Succession of Hendrick, 430 So.2d 734 (La.App.2d Cir. 1983), writ denied, 433 So.2d 1053 (La. 1983); Ellis, supra. Accord Succession of Pierson, 365 So.2d 507 (La.App.3d Cir. 1978), writ denied, 366 So.2d 575 (La.1979). Other cases cited in brief are likewise distinguishable on their facts.
Hence, collation of fruits, from date of death, is appropriate in the case sub judice.

Classification of Revenues
According to LSA-C.C. Art. 551:
Fruits are things that are produced by or derived from another thing without diminution of its substance.
There are two kinds of fruits; natural fruits and civil fruits.
Natural fruits are products of the earth or of animals.
Civil fruits are revenues derived from a thing by operation of law or by reason of a juridical act, such as rentals, interest, and certain corporate distributions.
The parties do not dispute the categorization of income from rental property as fruits, and this amount clearly falls within the parameters of the above-quoted article.
So too is the income received from the timber operations a fruit. Granted, such revenues usually are not so classified. As Comment B to LSA-C.C. Art. 551 explains:
Trees are born and reborn of the soil, but they are ordinarily considered to be capital assets rather than fruits on account of their slow growth and high value. See Harang v. Bowie Lumber Co., 145 La. 96, 81 So. 769 (1919). However, trees in a tree farm or in a regularly exploited forest may be regarded as fruits, because they are produced according to the destination of the property and without diminution of its substance. See Yiannopoulos, Personal Servitudes, § 27 (1968).
In the instant case, though, the record indicates that a tree farm existed on the Blanchard property at least by August 4, 1978, the date of Charlie Doll's death. Marking of trees to be cut, pursuant to a forestry management plan, had occurred sometime before July 14, 1978, and a $35, 638 bid for the selective thinning of a portion of the property was accepted on August 2, 1978. In fact, the evidence reveals that appellant contacted the forestry consultant and manager of the forest land at issue within one week of the original transfer to her.
Of course, the Civil Code does not define "tree farm" or "regular exploitation," as mentioned in the Revision Comments. Additionally, no cases have approached definitions of those terms. But, as shown by the record, the American Forest Council, which administers a national program to encourage improved management of forest lands, indicates that, "A tree farm is a tract of privately owned forest managed to produce continuous crops of trees with added benefits of improved wildlife habitat, watershed protection, outdoor recreation, and aesthetic value." Further, according to testimony, a tree farm may factually exist without the necessity for governmental or organizational certification.
Thus, in light of Comment B to LSA-C.C. Art. 551 and the previous discussion, those funds generated by timber operations on the Blanchard property may be regarded as fruit from a tree farm.
The third amount, a $2,404 federal tree planting subsidy received by appellant from the United States Department of Agriculture, can also be characterized as fruit. That sum, given the circumstances,[2] *805 clearly equates to income derived from the property without diminution.
Thus, $89,225.52, representing sums collected by appellant from date of death as related to the above three categories, is returnable as fruits.

The Mineral Lease Proceeds
The only remaining item consists of payments, totaling $70,795.46, received pursuant to two mineral leases. Appellant contends this revenue also constitutes fruit, relying on our decision in Alexander v. Alexander, 357 So.2d 1260 (La.App.2d Cir. 1978). Appellee asserts, however, the proceeds represent "products" that deplete the property. See LSA-C.C. Art. 488.
To classify mineral rights proceeds as fruits, instead of products, appears inconsistent with the Comments to LSA-C.C. Art. 551. Neither would such a determination accord with doctrinal material. See 2 Yiannopoulos, Louisiana Civil Law Treatise  Property, § 26 (2d Ed.1980); 3 Yiannopoulos, Louisiana Civil Law Treatise  Personal Servitudes, §§ 50, 68 (3d Ed. 1989). Those writings indicate that the 1976 revision to Article 551 should have overruled jurisprudential notions defining fruits differently in different fields, e.g., in the areas of usufruct, good or bad faith possession, community property, and taxation. Compare King v. Buffington, 240 La. 955, 126 So.2d 326 (La.1961) (usufruct); Milling v. Collector of Revenue, 220 La. 773, 57 So.2d 679 (La.1952) (taxation); Harang v. Bowie Lumber, 145 La. 96, 81 So. 769 (1919) (usufruct); Elder v. Ellerbe, 135 La. 990, 66 So. 337 (La.1914) (usufruct); Gregory v. Gregory, 223 So.2d 238 (La. App. 3d Cir.1969) (community property); Lagle v. Marchand's Estate, 129 So.2d 849 (La.App. 1st Cir.1961) (community property).
Nevertheless, three cases, Alexander, supra; Fuselier v. Estate of Peschier, 525 So.2d 577 (La.App.3d Cir.1988); and Succession of Lindsey, 477 So.2d 148 (La.App. 1st Cir.1985), all rendered post-revision, define mineral rights proceeds as fruits. Alexander and Fuselier appear to apply the law as it existed prior to the 1976 modification. Lindsey, a case clearly arising subsequent to the effective date of the change, is seemingly inconsistent with post-revision views. Thus, whether revenues collected under the present scenario constitute fruits or products, remains a question not yet squarely addressed by the jurisprudence.
Regardless of classification, however, in the case at hand the same result is obtained. The mineral lease is a real right. La.Mineral Code Art. 16. As a result, according to LSA-C.C. Art. 1264:
When collation is made in kind, the effects are united to the mass of the succession as they may be burdened with real rights created by operation of law or by onerous title. In such a case, the donee is accountable for the resulting diminution of the value of the immovable.
(Emphasis added). Thus, even if not characterized as fruits, the mineral lease payments would be returnable as a resulting diminution of the value of the immovable.

CONCLUSION
For the reasons assigned, the judgment of the trial court, ordering the return of sums to the succession of Charlie Doll, is affirmed. The judgment is modified, however, to reflect that only post-death amounts, totaling $160,020.98, are collated. Costs of this appeal are assessed to appellant.
AMENDED AND AFFIRMED.
MARVIN, Chief Judge, and NORRIS, Judge, concurring.
We concur in the result pronounced by J. Hightower and with his treatment of the house rent and timber proceeds. We affirm the judgment as it affects the mineral lease bonuses for these reasons:

The Mineral Lease Bonuses
The remaining issue is whether the bonuses (totaling $70,795) paid to Paddy Doll for the execution of two mineral *806 leases should be classified as fruits or as products of the immovable.
A product is something that is derived from a thing as a result of diminution of its substance. C.C. Art. 488. Fruits are things produced by or derived from another thing without diminution of its substance. Rentals are civil fruits. C.C. Art. 551, in part.
In the technical sense, the recovery or extraction of oil and gas from the ground diminishes the substance of the property from which it is produced. The extracted oil and gas itself would seem to be a product of the thing under C.C. Art. 488 and not a fruit under C.C. Art. 551. See 2 Yiannopoulos, Louisiana Civil Law Treatise  Property, § 26 (2d. Ed.1980) and 3 Yiannopoulos, Louisiana Civil Law Treatise  Personal Servitudes, §§ 50, 68 (3d Ed.1989) and cases cited and discussed therein. Compare, however, Alexander v. Alexander, 357 So.2d 1260 (La.App.2d Cir. 1978); Fuselier v. Estate of Peschier, 527 So.2d 577 (La.App. 3d Cir.1988), and Succession of Lindsey, 477 So.2d 148 (La.App. 1st Cir.1985). In this appeal we are concerned only with the classification of the $70,795 bonuses. We need not and do not address in the abstract the classification of extracted oil and gas.
The bonus for the execution of the lease is nothing more than the base rent that is paid the landowner by a lessee for the privilege of exercising the landowner's right to explore for and develop the land for production and capture of the oil and gas. Art. 15, La.Mineral Code. Bonus is distinguished from other terms in the oil and gas exploration industry such as royalty and delay rentals that may also be paid to the lessor by a mineral lessee. Texas Co. v. Fontenot, 200 La. 753, 8 So.2d 689 (1942).
This basic rent, or bonus in the ordinary sense, should be classified no differently than the rent paid by the lessee of a pasture or of a building and lot for the privilege of using the thing leased for a period of time. Rent is classified as a civil fruit by C.C. Art. 551.
We also note, parenthetically, that C.C. Art. 1264 may apply if a recorded lease, whether of minerals or of surface (a "real right"), burdens and diminishes the value of an immovable that is collated in kind. If there is a resulting "diminution of the value of the [collated] immovable" because of the "burden" of the recorded lease, the donee-collator is accountable for that diminution by the express language of the article.
We need not consider the effect of C.C. Art. 1264 on the fruit or product-classification issue in this appeal or the article's applicability. The litigants do not squarely present the issue and the record does not contain an estimate of the value of the immovable, whether before or after the leases were recorded. We can conceive that in some circumstances, a lease with terms very favorable to the lessor could cause an increase, rather than a diminution, in the value of the collated immovable which it "burdens."
We squarely hold that the bonus paid for an oil and gas lease is a civil fruit within the meaning of C.C. Art. 551.
NOTES
[1] Appellee conceded in brief that only amounts received after death are due.
[2] According to the record, the federal "subsidy" reimburses a landowner for a percentage of his replanting costs. As reimbursement, the amount would not normally be considered a fruit. However, in the instant case, appellant listed all "costs associated with planting new trees" as expenses, and the resulting interlocutory consent judgment for $120,000 clearly included those amounts. Thus, for purposes of collation, categorization of the sum as fruit is warranted.